JOHN RICHARDSON *vs.* GEORGE E. WATTS, and others.

Washington.    Opinion January 1, 1901.

*Partition. Parties. Possession. Deed. R. S., c. 88, §§ 2, 4, 12.*

In a petition for partition, all persons interested, if known, must be made parties; if unknown, it must be so alleged. New parties cannot be subsequently cited into court as respondents.

*Held;* that as Charles William Barker is one of the owners in common of the flats, and is not made a party to these proceedings, and as it is not alleged nor shown that he was unknown, and as no reason is shown, if any there could be, for not joining him as a party, the partition proceedings cannot be maintained.

In a petition for partition, sole seizin in the respondent may be established by a possession commenced twenty years before the trial, though less than twenty years before the commencement of the suit.

The court may correct an obvious error in a deed so as to make the calls consistent with each other, and the description perfect; but cannot include in the description land which the calls, fairly construed, do not include. Upon the facts in this case, *held;*

1.  That the manifest error in the calls in the deed of the "Barker lot" so-called, from John Sawyer to Charles F. Barker may be, and should be, corrected by extending the east line of the Barker lot southerly far enough, so that following the remaining courses and distances the last call will end at the "well."

2.  That, as to the strip of upland between the "Barker lot" and Cross Cove, respondents Watts and Stevens have acquired title in severalty by adverse possession.

3.  That the respondents Stevens and Watts were not co-tenants with the petitioner and his predecessors in title,—Stevens not at all,—and Watts not until April 1881, at which time, the ouster, in law, had already occurred.

4.  That the adverse possession of Watts was not interrupted, under the circumstances in this case, by his taking deeds from the heirs of John Sawyer.

5.  That Watts intended to claim and did claim title as far as to the shore, and that is sufficient in this respect as a basis for the claim of adverse possession, though he may have been mistaken as to the true line.

6.  That respondent Watts has also acquired title by adverse possession to the strip of upland between the road and Cross Cove, easterly of the "Barker lot."

7.  That Stevens has acquired title by adverse possession to the flats included in his deed from Martha E. Barker.

8. That Watts has not acquired title by adverse possession to any of the flats; that as to the flats, his title by disseizin is not extended beyond the line of actual occupation.

9. That all the Walker heirs, except Charles William Barker and Louise Barker Bagley, having conveyed to Watts their interest in the flats south of the ship-yard, the present owners of them in common are Charles William Barker, Louise Barker Bagley, the respondent Watts and the petitioner, respondent Stevens being sole seized of a specific portion.

ON REPORT.

The case appears in the opinion.

*H. H. Gray,* for petitioner.

Difficulty of partition no objection. If they would avoid the difficulty they ought to agree to buy, or sell. *Hanson* v. *Willard,* 12 Maine, 146; *Wood* v. *Little,* 35 Maine, 107.

A man is deemed to have seizin of the land co-extensive with the boundaries stated in his deed. *Brackett* v. *Persons Unknown,* 53 Maine, 228, 230, 231.

Where one has a right to use land for certain purposes, his occupation of it must be presumed, prima facie, to be in accordance with his legal right. *Mowe* v. *Stevens,* 61 Maine, 592.

As between tenants in common, mere possession accompanied by no act that can amount to an ouster of the other co-tenant, or give notice to him that such a possession is adverse, will not be held to amount to a disseizin of such co-tenant. Before it will have that effect there must be notorious and unequivocal acts of exclusion. *Hudson* v. *Coe,* 79 Maine, 83; *Ingalls* v. *Newhall,* 139 Mass. 268 (272); *Bellis* v. *Bellis,* 122 Mass. 414; *Silva* v. *Wimpenney,* 136 Mass. 253.

A conveyance of all the right, title and interest in a deed does not convey the land itself, or any particular estate in it, but the grantor's right, title and interest in it alone. The covenants in a deed are qualified and limited by the grant and cannot enlarge it. *Coe* v. *Persons Unknown,* 43 Maine, 432.

The administrator's deed from John Richardson to Margaret Richardson having been given for more than 25 years, and the petition and license for sale appearing regular, it will be presumed

in absence of evidence to the contrary that other formalities have been complied with. *Austin* v. *Austin*, 50 Maine, 74.

Monuments in a deed control courses and distances. *Haynes* v. *Young*, 36 Maine, 557; *Chandler* v. *McCard*, 38 Maine, 564; *Melcher* v. *Merryman*, 41 Maine, 601; *Robinson* v. *White*, 42 Maine, 209; *Beal* v. *Gordon*, 55 Maine, 482 ; *Chadbourne* v. *Mason*, 48 Maine, 389.

Possession of the land under a deed for more than twenty years will not give a title to such portion as lies beyond the lines therein described. *Dow* v. *McKenney*, 64 Maine, 138; *Worcester* v. *Lord*, 56 Maine, 265.

If the construction of a deed is doubtful, the practical construction put upon it by the parties and their successors may be looked at in connection with the deed itself and the circumstances existing at the time of its execution. *Whittenton Mfg. Co.* v. *Staples*, 164 Mass. 319.

If a deed fixes exactly the location of all the lines and bounda-. ries of the land conveyed, its construction cannot be controlled or affected by parol evidence. *Olson* v. *Keith*, 162 Mass. 485 ; *Stowell* v. *Buswell*, 135 Mass. 340.

*C. B. Donworth and F. I. Campbell*, for respondents.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, FOGLER, POWERS, JJ.

SAVAGE, J. Petition for partition of lands in Jonesport formerly belonging to John Sawyer.

Prior to 1850, John Sawyer was the owner of a large tract of land, consisting of upland and flats, the southerly end of which extended to low water mark in tide water in Cross Cove, so-called. The premises described in the petition are a parcel of this larger tract. Running easterly and westerly across this tract, and near Cross Cove, there was then, and is now, a road. In 1850, John Sawyer conveyed to Charles F. Barker a portion of the larger tract, containing about four and three-quarters acres, and the land so conveyed has since been known as the " Barker lot." The " Barker

lot" included lands upon both sides of the road.  Upon the death of John Sawyer, the remainder of the tract descended to his heirs, one-third to Margaret Richardson, a daughter, one-third to Nathaniel Sawyer, a son, and one-third to the heirs of Mary Walker, a deceased daughter.  Of this last third, one-fourth descended to Joshua S. Walker, a son of Mary Walker, one-fourth to Sylvia J. Woodward, a daughter, one-fourth to Margaret S. Thompson, a daughter, and one-fourth to the seven children of Mary Ann Barker, a daughter, then deceased.  The names of these seven children were Charles William .Barker, Ellen M. Barker, now Mrs. Cummings, Mary Barker Joy, Carrie A. Barker, now Mrs. Greely, Evelyn Barker, Ada Barker, Louise Barker Bagley, the last named being one of the defendants in this proceeding.  After the death of John Sawyer, his son, Nathaniel Sawyer, died, in 1873, intestate and with out issue.  The petitioner claims that the interest of Nathaniel Sawyer in the estate was legally conveyed by his administrator to Margaret Richardson.  The defendants deny the validity of this conveyance, and claim that Nathaniel Sawyer's interest descended to his sister, Margaret Richardson, and to the children and grandchildren of his deceased sister, Mary Walker.  The conclusion to which we have arrived renders it unnecessary for us to pass upon the validity of this administrator's conveyance.

Prior, however, to the sale by the administrator, all the heirs of John Sawyer, being also all the heirs of Nathaniel Sawyer, except Louise Barker Bagley, by an instrument under seal, appointed James A. Milliken, B. F. Carver and George W. Smith, as commissioners, and empowered them to make partition of the John Sawyer tract of land, and in this instrument the parties mutually covenanted "to abide by the action and report of said commissioners, and to complete and affirm the same by quitclaim deeds to each other as said commissioners shall assign and report."  The commissioners subsequently went upon the premises, established the outside boundary lines to the satisfaction of the parties, and made partition of the tract in accordance with a plan made and returned by them as a part of their report.  They plotted and divided the land into eighteen lots, which they assigned to the heirs.  That part of the

estate lying north of the road they divided into three lots, numbered 16, 17 and 18, lot 16 lying on the westerly side of the tract, and lot 18, on the easterly. Lots 16 and 18 extended on the south to the road, for a part of their widths at least, but lot 17, between them, extended only to the north line of the "Barker lot." Lots 1 to 15 inclusive lay on the south side of the road, and some of them bordered on Cross Cove. The commissioners assigned to Margaret Richardson lots 4, 5, 9, 11 and 15 south of the road, and lot 16 north of the road; to the heirs of Mary Walker lots 2, 6, 7, 10 and 14 south of the road, and lot 18 north of the road; and to the heirs of Nathaniel Sawyer lots 3, 8 and 13 south of the road, and lot 17 north of the road.

July 28, 1875, all the heirs of Mary Walker conveyed by deed of quitclaim to Margaret Richardson "all that part of the real estate of John Sawyer, late of Jonesport, deceased, comprised in lots number 4, 5, 9, 11, 15 and 16 according to the survey and plan of the John Sawyer estate made by J. A. Milliken, B. F. Carver and George W. Smith, dated July 7, 1875, meaning by these presents to confirm and make final the partition of said John Sawyer estate, made by the said Milliken, Carver and Smith." In this deed, Louise Barker Bagley joined as grantor, though she had not been a party to the original agreement for partition. On the same day, Margaret Richardson conveyed by deed of quitclaim, to the heirs of Mary Walker, by name, including Mrs. Bagley, all her interest in lots 2, 6, 7, 10, 14 and 18 according to the same survey and plan, and expressed to be for the same purpose. It does not appear that any conveyance was made of the lots assigned to the heirs of Nathaniel Sawyer. Margaret Richardson died intestate in 1890, leaving the petitioner as her sole heir.

The petitioner claims that there is a strip of upland, lying between the road and Cross Cove, south of the "Barker lot," and that east of the "Barker lot" and south of lot 18 there is another strip of upland, between the road and Cross Cove, and that neither of these strips of upland (in fact, one continuous strip) is included in the "Barker lot," nor in the partition made by the heirs of John Sawyer; and hence that the title to these parcels remains in

common and undivided in the heirs, and in the assigns of the heirs, of John Sawyer, of whom he, the petitioner, is one. These parcels of upland, with the flats adjacent thereto, are comprised within the description of the premises sought to be divided in this petition.

On the other hand, the defendants deny that the petitioner has any title or interest in the premises. The defendants Watts and Stevens claim, instead, that the original deed of the "Barker lot" from John Sawyer to Charles F. Barker conveyed all the land between the side lines from the road to the shore of Cross Cove, and that by mesne conveyances from Charles F. Barker, they own in severalty, specific portions of the "Barker lot," Stevens claiming a small lot on the south of the road extending from the road to the shore, and Watts claiming the remainder of the "Barker lot" on both sides of the road.

Although, as heretofore stated, both of these parcels of upland are contiguous and form but one narrow strip of land along the shore of Cross Cove, we shall consider them separately, and, for convenience, we shall designate the upland south of the "Barker lot" as the "Barker lot strip," and the upland easterly of the "Barker lot" as the "easterly strip."

First as to the "Barker lot strip." The contentions of the parties make it necessary to examine more particularly the description in the deed of John Sawyer to Charles F. Barker of the "Barker lot." It is as follows:—"Commencing at my well on the north side of the town road opposite my house running north 2 degrees east 26 rods, thence S. 82 E. 22 rods, thence S. 63 E. 19 rods, thence S. 3-30 W. 9 rods, thence South 46 W. 9 rods, thence South 85 West 6 ½ rods, thence 50 West 6 rods, thence S. 87 W. to the place of beginning." It will be observed that all the calls in the deed, except the last, are limited by specific courses and specific distances, and that the last is limited by a specific course and a monument, the well, which was the place of beginning. It is conceded that if the description be applied to the premises in question, following the courses and distances as they read in the deed, the last call will not end at the place of beginning, but at a point about one rod and thirteen links northerly therefrom. There is, therefore,

some mistake in one or more calls in the deed, and we must ascertain, if we can, what the mistake is, and if it can properly be done, we must correct it, so as to give effect to the description as the parties intended it to be.    This, we think, can be done.    The petitioner contends that the error is in the course given in the last call, and that it should be corrected by swinging the last line to the southward until the end strikes the well.    The defendants claim that the error is in the distance given in the fourth call, and that it should be corrected by lengthening that course from nine rods to about eleven rods.

Without attempting a full discussion of the evidence, we may say that, on the whole, we find that our minds incline to the latter theory.    The deed shows that the description was according to a plan made by Ichabod Bucknam, and the evidence shows that this plan was made ten or more years earlier than the deed.    Whether the error was made in Bucknam's survey or in copying the courses and distances from the plan into the deed, we cannot tell.    Nor do we know the shape of the shore line when the plan was made, nor its distance from the road.    The general shape of the southern line of the lot, as formed by the fifth, sixth and seventh calls in the deed, lends considerable force to the suggestion that it was intended that this line should conform substantially to the bank of Cross Cove in that locality, at high water mark.    If so, it would tend to show that the distance given in the fourth call is too short.    Again, the fourth call as given ends near the center of the road, and it seems rather improbable that this should have been intended, taking into account the general situation of the land and of the lines as they were.    The evidence also shows that the contour of the land, at the fourth call, is uneven and pitches sharply towards the road, rendering it more difficult to make a perfect survey, shortening the distance which could be measured by chain at one time, and adding to the likelihood of a miscount or other error in chaining.    But, whatever may have been the precise cause of the error, we think the probabilities of an error in distance in the fourth call are greater than those of an error in course in the last call; and we think that the east line of the "Barker lot" should be

extended southerly far enough, so that following the remaining courses and distances the last call will end at the well.

But even this construction of the deed does not carry the "Barker lot" to high water mark. There still remains some upland between the "Barker lot" and Cross Cove. The defendants urge that it was the obvious-intention of the parties that the deed should convey all the upland, and we have already said that there is force in the suggestion. If the construction of a deed is doubtful, the practical construction put upon it by the parties and their successors may be looked at in connection with the deed itself and the circumstances existing at the time of its execution. *Whittenton Mfg. Co.* v. *Staples,* 164 Mass. 319. And, as we shall have occasion to point out hereafter, we think the practical construction given this deed by the parties and those who succeeded them tends very strongly to show that they all supposed that the "Barker lot" extended to the shore. But the difficulty is that the deed does not so extend it. Correcting the error as we have, there is no longer any doubt about the construction of the deed. The boundaries are made certain and we cannot enlarge or extend them. We may correct an obvious error so as to make the calls consistent with each other, and the description perfect, but we cannot include in the description land which the calls, fairly construed, do not include.

But the defendants, Watts and Stevens, claim further that, wherever the line established by the deed may be, they have acquired title in severalty to the "Barker lot strip" by adverse possession.

It is shown, and not denied, that Charles F. Barker and all his successors in title in the "Barker lot" down to the present time have been in the open, notorious and exclusive possession of the strip of upland in question, but the petitioner contends that the possession has not been adverse. He claims that the original entry by Charles F. Barker was permissive, and that nothing is shown, at least until after Watts and Stevens purchased their lots in 1879, to change the character of the possession. We think that, contrary to this claim, it might well be argued from the conduct of

the parties, and especially from the original partition proceedings in 1875, to which all of the heirs of John Sawyer became parties, that it was supposed that the "Barker lot" went to the shore. If this piece of upland in dispute possesses the value claimed for it by the petitioner, it is difficult to understand why it was omitted from the partition, unless the parties understood that it was a part of the "Barker lot." At the same time, it is apparent from the plan made by the commissioners that a survey of the "Barker lot" by the description in the deed showed then, as it shows now, that the "Barker lot" did not extend to the shore. But, whatever may have been the character of the possession originally, we think the evidence clearly shows that the possession of Watts and Stevens has been adverse from the times they respectively took their deeds, October 20, 1879, and October 22, 1879. Their disseisins had not continued twenty years at the time this petition was brought, but more than twenty years had elapsed at the time of the trial, and that was sufficient. In a petition for partition, a sole seisin in the respondent may be established by a possession commenced twenty years before the trial, though less than twenty years before the commencement of the suit. *Saco Water Power Co.* v. *Gold-thwaite,* 35 Maine, 456 ; *Brackett* v. *Persons Unknown,* 53 Maine, 238.

We have not failed to notice certain particulars wherein the petitioner criticises the defendants' claim of title by adverse possession, and the evidence supporting it. First, he says that the parties were tenants in common, and that there is no evidence of such ouster of co-tenants, or such notice to them, as should be regarded as sufficient proof of ouster or disseisin. The answer is that the defendants were not co-tenants with the petitioner and his predecessors in title,—Stevens not at all,—and Watts not until April, 1881, when he took from some of the Walker heirs a quitclaim deed of "any part of the Barker shipyard that may belong to us by survey." But at that time the disseisin had commenced, —in law, the ouster had already occurred.

Again, the petitioner urges that the twenty years' possession of defendant Watts was interrupted and his claim defeated by his

taking the deed in question, and by taking similar deeds from other heirs later; that this was a recognition of the title of the heirs of John Sawyer. We do not think so. It is abundantly in evidence that from the time the first of these deeds was given, there has been a dispute concerning the title to the "Barker ship-yard," that is, to some or all of the land south of the road, and including the strip of upland now in question. Just when the dispute originated does not appear, but it appears that in 1880 or 1881, one Taylor made a survey of "Barker lot," and the survey disclosed that the "Barker lot strip" lay south of the line, and this fact seems to have become known to all the parties interested. Whether an existing dispute led to the survey, or whether the survey gave occasion for the dispute, is immaterial. The fact is clearly shown that there was a dispute. Watts claimed to own to the shore. This claim was denied by Margaret Richardson, and later by this petitioner. All the upland, both the "Barker lot strip," and the "easterly strip," had been known as the "shipyard," and in 1881, Watts, being about to build a house on "shipyard" land, was forbidden by Mrs. Richardson, by letter, from putting the building on "her land," claiming that it was undivided land. The reply of Watts, dated June 8, 1881, clearly shows that he then claimed the land adversely. Among other things, he said "I will wait as long as you want me to for you to decide whether you or I own the land, but I shall expect damages for every day that the building is detained." To this, Mrs. Richardson answered: "Just received your note saying you would proceed no further until my claim was established, expecting damages till that time, so I hereby say I recall my note, and you can proceed as though nothing had been said." It does not appear that Watts has ever waivered in his claim. We think that, under such circumstances, the adverse possession of Watts was not interrupted by his buying in and extinguishing whatever title the other heirs had. *Bean* v. *Bachelder*, 74 Maine, 202. His disseisin, at least as to Mrs. Richardson and the present petitioner, was not thereby purged. Instead of yielding his claim, he seems to have been fortifying it against the contingency of a future lawsuit.

Finally, it is contended that the case presented is one where there was a mistake as to the true bounds, and that there is no evidence that either Watts or Stevens ever intended to claim beyond the true line wherever it might be, and that, therefore, they gained no title by adverse possession south of the true line of the "Barker lot" as we have found it to be. *Worcester* v. *Lord*, 56 Maine, 265; *Dow* v. *McKenney*, 64 Maine, 138.

But, though there may have been a mistake as to the true line, we think that the evidence shows that what they intended to claim, and did claim, was the title as far as to the shore. If that was what they intended to claim, the mistake in the line is unimportant. This court said in *Ricker* v. *Hibbard*, 73 Maine, 105, "The intention is the test and not the mistake. It is not unusual for an adverse possession to begin under a mistake as to title; perhaps it is so in most cases where the party is honest. If he goes into possession, fully believing that he has a good title, and intending to hold under that title, surely such a claim would not be rendered invalid by a discovery after twenty years that the title was not good."

In this connection, we may observe that the petitioner claims that the defendants have no title by deed south of the road. This claim is based upon the petitioner's construction of a mortgage, afterwards foreclosed, given by Charles F. Barker to George Walker, and which is one of the links in the defendants' chain of title to the "Barker lot." But we think it is unnecessary to further consider this claim, for if we assume that the defendants failed to get title to any of the land south of the road by deed, the evidence satisfies us that the defendants would have obtained title to the whole of that land, both above and below the original south lines of the "Barker lot," by adverse possession, for the reasons and upon the principles hereinbefore stated as being applicable to the narrow strip south of those lines. Besides, in any event, the petitioner has no title north of the "Barker lot" south line.

We hold, therefore, that the petitioner has no title to the "Barker lot strip," and cannot have partition thereof.

Next as to the "easterly strip." This strip of upland, a rod or two in width, is plainly not within the description in the Barker deed. When Watts bought of Martha E. Barker in 1879, he went into possession of all of the land south of the road, as far west as the Stevens lot, and has since retained it. He has occupied the whole "shipyard." His deed, by reference to prior deeds, described his purchase as "the homestead of the late C. F. Barker." The description gave no metes and bounds, and he testifies that he did not then know of the original deed to Barker. Barker, in his lifetime, had been in possession of the whole shipyard, including this strip as well as the "Barker lot strip," and Watts may well have understood that his purchase included all the land embraced in the "shipyard." The evidence satisfies us that the occupation by Watts of the "easterly strip" was adverse, as well as notorious, continuous and exclusive.

Many of the suggestions made in reference to the "Barker lot strip" apply equally well to this "easterly strip," but we need not repeat. The petitioner, therefore, cannot have partition of this strip.

We will now consider the remaining parcel or parcels of the premises described in the petition, which are flats. It is clear that Watts gained no title by his original deed to the flats adjacent to the "Barker lot." On the other hand, the deed to Stevens appears to cover a portion of the flats adjoining his upland. To this, the grantor of Stevens had no title either by deed or adverse possession. But inasmuch as Stevens held under a recorded deed which included a strip of upland and some portion of the flats, we think it may well be held that the title by adverse possession which he has acquired to the upland extends also to the flats included in his deed. *Brackett* v. *Persons Unknown*, 53 Maine, 238. But Watts has not gained title by adverse possession to any of the flats. He has not held under a recorded deed which included the flats, and his title by disseisin is not extended beyond the line of actual occupation, as was decided in *Thornton* v. *Foss*, 26 Maine, 402. Watts has however acquired certain interests in the flats south of the "Barker lot" by deeds from the Walker heirs, and in the same manner, in the flats south of the road and east of the east line of the Barker

lot extended. To properly understand the condition of the title, we should notice that in the report of the commissioners appointed by the heirs to make partition, lot 18 is described as bounded on the south by the road, and does not include the strip of upland which we have designated as the "easterly strip." The plan accompanying the report upon inspection does not show clearly whether the "easterly strip" was surveyed and plotted as a part of lot 18 or not. Margaret Richardson, the petitioner's predecessor in title, conveyed to the Walker heirs her interest in lot 18 according to "survey and plan." The question has not been argued by counsel, and we do not decide whether the "easterly strip" was included in the plan of lot 18 or not. If it was, then the petitioner has had no title to it or to the flats adjoining, because they were quitclaimed by his mother, Margaret Richardson, to the Walker heirs. But assuming, as the petitioner contends, that the strip is not a part of lot 18, what is then the condition of the title to these flats, as well as to the flats south of the "Barker lot"? Prior to any conveyances to Watts, they were owned in common and undivided by Margaret Richardson and Joshua S. Walker, Margaret S. Thompson, Sylvia J. Woodward, Carrie A. (Barker) Greeley, Evelyn Barker, Ada Barker, Charles William Barker, Ellen M. (Barker) Cummings, Mary C. Joy and Louise Barker Bagley. Mrs. Woodward, Mrs. Cummings and Mrs. Joy have conveyed to Watts all their interest in all the flats, "beginning at center of road on base line between land of E. M. Sawyer and said lot No. 18, running around south side of said No. 18, and south of the road in Cross Cove so-called to C. M. Woodward's east line." And as if that were not sufficiently explicit, Mrs. Cummings and Mrs. Joy also conveyed "all our claim to all land, flats and privileges south of Barker lot now owned by said Watts."

Mr. Walker, Mrs. Thompson, Mrs. Greeley, Evelyn Barker and Ada Barker have conveyed to Watts "any part of the Barker shipyard that may belong to us by survey." The "shipyard," as we have seen, embraced both of the narrow strips of upland in controversy. The deeds of these latter grantors purport to convey the upland which is not included in a survey of the Barker lot. These conveyances of the upland presumably conveyed the inter-

ests of the grantors in the adjacent flats, and in this case we hold that they did so, in fact, there being nothing here to show the contrary. *Snow* v. *Mt. Desert Island Real Estate Co.*, 84 Maine, 14.

Therefore, as we construe the deeds, all the Walker heirs, except Charles William Barker and Louise Barker Bagley, have conveyed to Watts their interest in the flats south of the shipyard. Charles William Barker and Louise Barker Bagley have conveyed nothing to any one. The petitioner has the interest of Margaret Richardson. The owners of the flats, therefore, are Charles William Barker and Louise Barker Bagley, George E. Watts and the petitioner; and Charles G. Stevens sole seized of a specific portion.

The defendants in this proceeding are George E. Watts, Charles G. Stevens and Louise Barker Bagley, and the petition alleges that no others have any interest. It appears that one party having no interest in common and undivided is made a defendant, and that one party having an interest in common is omitted.

Under these circumstances, can this petition be maintained? We think not. The error of misjoinder of Stevens might be cured by a discontinuance, but we know of no method by which new parties to a proceeding of this character can be cited into court as defendants. Yet, the very nature of the proceeding required that all parties interested, if known, shall be made parties. The statute, R. S., c. 88, § 2, requires a petitioner to "state the names of the other tenants in common, and their places of residence, if known, and whether any or all of them are unknown."

Service is then made upon the parties named. Then it is provided in section 4, that "when the co-tenants are not all named in the petition" (necessarily those alleged to be unknown), the court may make a special order of notice. In this case there is another co-tenant, and it is neither alleged that he was unknown, nor it does not appear that he was unknown in fact, nor is reason shown, if any there could be, for not joining him as party defendant; and, of course, no notice has been given to him, whether known or unknown.

For these reasons, we think the petition must be dismissed.

*Petition dismissed with costs; but without prejudice as to the flats adjacent to land of Watts.*