JOSEPH STEWART, et al. *vs.* JAMES S. SMALL, et als.

Piscataquis.    Opinion July 12, 1920.

*Real Action.   Common Law Adverse Possession.   ·Possessory Titles to Wild Land.*
*R. S., Chap. 110, Sec. 18.   The constituent elements of common law adverse posses-*
*sion must be established by clear proof of acts and conduct of such a character as to*
*put a man of ordinary prudence, and particularly the true owner, on notice that*
*the estate in question is actually, visibly and exclusively held by a claimant*
*in antagonistic purpose.   Manifestly the Legislature intended to clothe*
*possessory titles to wild lands with status and protection compara-*
*tively equal to similar titles to other lands.   The real purpose*
*and intent of the Legislature will prevail against the*
*general words which it used when, having regard to the*
*object to be secured, exact adherence to verbiage*
*obviously would lead to injustice.*

Real action. Plaintiffs have the true record title to an uncultivated and uninclosed lot of land, numbered 90, containing approximately one hundred and sixty acres, in the incorporated town of Wellington. Relying on a chain of recorded deeds, the first being one on sale of the lot for non-payment of taxes, and, additionally, on common law adverse possession, defendants set up, as to the whole lot, a better title in themselves. Failing this, then, with regard to the south half of the lot, defendants maintain that they have title paramount to that of plaintiffs, by force of the ground that, continuously for twenty years next prior to the commencement of suit for recovery of the land, they, and those from whom in immediate line they derivatively claim, (1) have claimed said south half under recorded deeds, (2) have paid all taxes assessed thereon, (3) and have held an exclusive, peaceable, uninterrupted and adverse possession thereof comporting with the ordinary management of such kind of land in the State of Maine.

Substantial infirmities patent on the face of the document, and not elsewhere corrected, render the tax deed, with which paper title of defendants begins, inoperative to convey the described land. Nor have defendants sustained the proposition that common law adverse claim of the land ripened into title. However imperfect, by the standard of common law rule, their acts of ownership were, yet such acts as related to the south half of the lot must be held to have attained to peaceable, exclusive, continuous and adverse possession, tallying with the ordinary management of wild lands. And besides, defendants have fulfilled the other requisite statutory requirements.

On the record before us, defendants have the better title to the south half of demanded premises. But demanded premises include the whole lot. Plaintiffs have title to the north half.

A general verdict for defendants clearly was unwarranted.

On motion. Real action to recover an uncultivated and uninclosed lot of wild land situate in the town of Wellington. Plea, nul disseizin. The jury returned a verdict for the defendants. The case was taken to the Law Court on plaintiff's motion for a new trial. Motion sustained. New trial granted.

Case stated in the opinion.

*John W. Manson, and Harry R. Coolidge,* for plaintiffs.
*James H. Hudson, C. W. Hayes, and J. S. Williams,* for defendants.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

DUNN, J. Real action respecting an uncultivated and uninclosed lot of land, numbered 90, containing approximately 160 acres, in the incorporated town of Wellington. Plea nul disseizin. Verdict was for defendants. Plaintiffs present the case on motion in usual form. They have the true record title. Relying on a chain of recorded deeds, the first in which is one to the corporation of the town of Wellington from its treasurer, on sale of the lot, in the year 1875, for non-payment of taxes, and, additionally, on common law adverse possession, defendants set up, as to the whole lot, a better title in themselves. Failing this, then, with regard to the south half of the lot, defendants maintain that they have title paramount to that of the plaintiffs, by force of the ground that, continuously for twenty years next prior to the commencement of suit for recovery of possession of the land, they, and those from whom in immediate line they derivatively claim, (1) have claimed said south half under recorded

deeds; (2) have paid all taxes assessed thereon; (3) and have held an exclusive, peaceable, uninterrupted and adverse possession thereof comporting with the ordinary management of such kind of land in the State of Maine. R. S., Chap. 110, Sec. 18.

Substantial infirmities patent on the face of the document, and not elsewhere corrected, render the tax deed, with which paper title of defendants begins, inoperative to convey the described land. There is failure to show that the treasurer of the town, in making sale of the lot, regarded legislative direction concerning the extent of the delinquent estate "required" to be sold to defray the unpaid tax and charges. R. S. (1871), Chap. 6, Sec. 160. The deed contains recital that the treasurer offered for sale such part of the real estate as "would be sufficient to pay the tax . . . . ," and that, "no person offering to pay the same for a fractional part," he sold the whole. But what, in the treasurer's opinion, was "sufficient" for the purpose may have been more than "was required" therefor. *French* v. *Patterson*, 61 Maine, 203. More than that, it does not appear that the treasurer actually exposed for sale, and sought offers for a purchase of, a fractional part of the land adequate to pay the tax and charges, and could obtain no bid. *Ladd* v. *Dickey*, 84 Maine, 190; *Milliken* v. *Houghton*, 97 Maine, 447. It follows that defendants' paper title is founded on a nullity.

Nor have defendants sustained the proposition that common law adverse claim of the land ripened into title. There is no fixed rule whereby actual possession of real property by a hostile claimant may be determined. Ever to be taken strictly, the constituent elements of common law adverse possession must be established by clear proof of acts and conduct fit to put a man of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly and exclusively held by a claimant in antagonistic purpose. The acts here advanced as indicative of ownership, taken singly or collectively, and comprising, intermittingly over a period of at least 20 years, the cutting of timber from which, in the nearby vicinity of the lot, chiefly was built two dwelling houses, a store building, and a schoolhouse; the removal therefrom, with frequency, of fuel-wood for use at claimant's house; the cutting, sale and use of shingle stuff; of material for shovel handles; of lumber other than that for the mentioned buildings; the digging of juniper knees; together with the erecting and maintaining for some years, less, however, than 20, of a

camp on the shore of a small pond in the northeast corner of the lot, resorted to, now and then, by hunting or fishing or vacation parties, as well as other acts of lesser moment, whether personally by defend- · ants or by others with their permission, fail to show that the lot was exclusively possessed by anybody, and fall far short of showing an ouster of the true owner from his constructive possession thereof, followed thereafter during the period for which adverse possession must be held, by that open, notorious, hostile, exclusive and continuous actuality of possession essential at common law, which would enable these defendants, in denial of a real record title unaffected by mere non-use, thereby to evince legally meritorious title in themselves. *Chandler* v. *Wilson*, 77 Maine, 76; *Hudson* v. *Coe*, 79 Maine, 83; *Adams* v. *Clapp*, 87 Maine, 321; *Smith* v. *Sawyer*, 108 Maine, 485; *Webber* v. *McAvoy*, 117 Maine, 326.

Anticipating conclusion of their failure to establish title otherwise, defendants argue, touching the south half of the lot, that they have shown in themselves, in a manner different from the common rule, a title outranking that of plaintiffs. They insist that, continuously for 20 years, counting backward from commencement of suit by true record owner for recovery of possession, all a statute (R. S., Chap. 110, Sec. 18,) exacts has been fully met. The statute adverted to reads:

"No real or mixed action, for the recovery of uncultivated lands or of any undivided fractional part thereof, situated in any place incorporated for any purpose, shall be commenced or maintained against any person, or entry made thereon, when such person or those under whom he claims have, continuously for the twenty years next prior to the commencement of such action, or the making of such entry, claimed said lands or said undivided fractional part thereof under recorded deeds; and have, during said twenty years, paid all taxes assessed on said lands, or on such undivided fractional part thereof, however said tax may have been assessed whether on an undivided fractional part of said lands or on a certain number of acres thereof equal approximately to the acreage of said lands or of said fractional part thereof; and have, during said twenty years, held such exclusive peaceable, continuous and adverse possession thereof as comports with the ordinary management of such lands or of undivided fractional parts of such lands, in this state. . . . ."

Under date of February 13th, 1885, the town of Wellington, itself the purchaser of the whole lot at tax sale, quitclaimed the south half

to Almeda F. Moulton.  Her deed remained unrecorded for more than
2 years.  She conveyed to one Ezra Andrews, who recorded his deed
July 30th, 1887, four days after its date.  Andrews, in 1890, by deed
withheld from record until September 27th, 1892, transferred to
Levi M. Small.  Small, in 1894, also had deed of the north half of the
lot, but did not record it for almost 9 years.  On this branch of the
case claim is not laid to the north half of the lot.  In 1909, by deed
dated April 17th and recorded April 19th, Mr. Small conveyed the
whole lot to his son, the defendant James S. Small, who, on December
18th, 1913, by mortgage deed recorded December 23rd of the same
year, conveyed the south half to Forrest A. Small, who has since died,
and whose administrators are defendants here.  There is no occasion
to look into the effect of delay in recording certain deeds, for proof is
clear enough that from 1893, following record in 1892 of deed from
Andrews to Levi M. Small, to and including the year of 1914, taxes
were paid on the land purporting to be conveyed by that deed, for a
part of the period by Levi M. Small, and more recently by his son and
grantee, defendant James S. Small.  This proof comes from positive
testimony of James S. Small that payment of the series of taxes was
made, either by his father, with whom he lived and with whose busi-
ness affairs he always was closely familiar, or by himself, as the assess-
ments annually recurred.  Odd receipts covering certain of the pay-
ments are in evidence.  The taxes were laid, as the records of assess-
ments show, at first to the one Small and later to the other, either on
the south half or the whole lot, but never exclusive the south half.
From the beginning of Levi M. Small's occupation forward, for full
twenty years or more, the south half of lot 90 was openly and con-
tinuously claimed under recorded deeds.  Lot 90 corners the Small
homestead farm.  It was used in connection with that farm.  The
Smalls had roads running through its length.  Their already recited
doings were executed in varying degree on the relative halves of the
lot, for they claimed it all.  Thus they furnished themselves lumber
for a new dwelling house on the farm, and for the numerous other
purposes that timber and wood there were requisite.  However
imperfect, by the standard of common law rule, their acts of owner-
ship were, yet such acts must be held to have attained to peaceable,
exclusive, continuous and adverse possession tallying with the
ordinary management of wild lands.  But the statute does not con-
template reckoning of time from an overt act initiating disseizin.

The count shall be backward from suit brought or entry made for recovery of the land. A confronting question is, from which of two suits between the same parties, for recovery of the land, payment of a tax by record title owner intervening, shall count begin? Proceedings first were instituted by these plaintiffs in 1915. In that action, at their own instance, they became nonsuit. In 1918 they brought the present action. Nor is that all. In the interval between the two suits, they caused payment of a tax assessed against defendant James S. Small, for the year of 1917, on lot 90, and overdue, to be made to the town collector. They now strenuously assert interruption of continuity of tax payments for the prescribed length of time by adverse claimants. Their insistence is that, regardless of the situation as viewed from the first suit, defendants have not proved payment of taxes "for the twenty years next prior to the commencement of (this) such action for recovery." Without pausing to discuss whether plaintiffs, in paying the tax on the south half, were other than volunteers, it is sufficient to say their contention that time should be found from the second suit may be, and likely is, within literal import of the phraseology of the statute. But the real purpose and intent of the Legislature will prevail against the general words which it used when, having regard to the object to be secured, exact adherence to verbiage obviously would lead to injustice. The reason of the law is the life of the law. The common law favors equitable interpretation of remedial statutes, and permits departure from the strict letter to arrive at manifest intent. *Holmes* v. *Paris*, 75 Maine, 559. "A thing may be within the letter of the statute and not within its meaning, and within its meaning, though not within the letter. The intention of the law maker is the law." *Smythe* v. *Fiske*, 23 Wall., 374. "The real meaning of the statute," said EMERY, J., in *Landers* v. *Smith*, 78 Maine, 212, "is to be ascertained and declared even though it seems to conflict with the words of the statute." The intent of the Legislature, as expressed in the statute, and interpreted in the light of the apparent purpose of the legislation, shall govern; although such intent seemingly be at variance with the imprinted words. *Gray* v. *County Com'rs.*, 83 Maine, 429; In re *Penobscot Lumbering Association*, 93 Maine, 391. Context of the statute under consideration demonstrates legislative intent to clothe possessory titles to wild lands, about which, in the nature of things, there is absence of actual, physical occupation so open, so continuous

and exclusive as in similar titles to other lands, with status and protection comparatively equal to the latter.   *Soper* v. *Lawrence Bros. Co.*, 98 Maine, 268.   To effectuate intention the statute should receive a rational, sensible construction, lest otherwise interpretation lead to unreasonable result.   Paraphrasing language of the Legislature, if defendant in a real action, and his grantors, respectively, for the period of 20 years immediately before and up to either commencement of a suit or of entry by the true record owner to regain possession of wild land, shall have satisfied all conditions of the statute, then what otherwise might be evidence only of trespass shall be disseizin, and limitation of remedy shall bar suit against him for recovery of the land.   Bringing suit, voluntary nonsuit, payment of tax and suing again, did not give to these plaintiffs a footing more secure than when they sued at first.   After claim under recorded deeds, payment of taxes and comparable possession all had gone on, in prescribed manner, for the period of limitation, statutory conditions were fulfilled.   Those several acts together created as against the record owners a barrier not by them removable.   They could not start anew running of a statute conceived by the court to be beneficial in nature and entitled to liberal reading.   The Legislature intended to bar remedy when designated conditions were met.   It did not intend its enactment to be meaningless or absurd.

On the record before us, defendants have the better title to the south half of demanded premises.   But demanded premises include the whole lot.   Plaintiffs have true record title to the north half.   A general verdict for defendants clearly was unwarranted.   The entry must be,

*Motion sustained.*
*New trial granted.*