NAPOLEON LANDRY

*vs.*

O. J. GIGUERE.

Kennebec.     Opinion September 4, 1928.

*J. A. Letourneau,*
*F. Harold Dubord,* for plaintiff.
*Harvey D. Eaton,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, BARNES, PATTANGALL, JJ.

PATTANGALL, J.  On exceptions.  Real action.  Plea nul dis-
seizin.  Case tried before single justice.  Judgment for defendant.
The premises in dispute consist of a rectangular piece of land ad-
jacent to the rear and west wall of the brick building of the de-
fendant, situated at the corner of Main and Silver Streets in
Waterville and on the south side of Silver Street.

Next south on Main Street of the defendant's building is a
brick building, called now the Paganucci and formerly the Parent
building.  The south wall of the defendant's building for its length
is a party wall for the north wall of the Parent building but this
last wall extends westerly of the defendant's building ten feet.

Next west on Silver Street of the defendant's building is a
wooden building of the plaintiff, which runs back southwesterly
from Silver Street at right angles to the street.  The east wall
of the plaintiff's building and the west wall of the defendant's
building are for about twenty-seven feet back from Silver Street
in contact with each other, or practically so, but from this point
the west wall of the defendant's building turns towards the south
and continues to the Parent building, striking it at right angles.

There is therefore made by the west wall of the defendant's
building, by that part of the Parent building which extends ten
feet beyond the defendant's building, and in part by the east wall
of the plaintiff's building, a triangular space, the latter wall be-
ing part of the line of the hypothenuse.  Between the south end of
the plaintiff's building, including a piazza about five feet wide
built on in 1925, and the west end of the Parent building is an
open space about six feet.

Leading into the basement of the defendant's building is a roll-
way, housed over, five feet wide north and south and five and a
half feet deep east and west.  Between this rollway and the Parent
building is a space of the same depth as the rollway and 5.75 feet
wide north and south, for the greater part covered by a wooden
elevator.  The land in suit as described in the writ is that part of
the triangle included within the measurements of the rollway just
stated and of the space between the rollway and the Parent build-
ing and a little more, by reason of the rollway being located, ac-
cording to the description of the writ, six inches further to the

north and also being made one foot deeper, i.e., six and a half feet, east and west.

With the exception of these structures, the triangle is open space.

Both plaintiff and defendant claim title to all of the triangle. Their claims arise in this way: September 5, 1866, Elah Esty and Thomas G. Kimball conveyed to the Waterville National Bank the lot at the corner of Main and Silver Streets with the description, "bounded thus, beginning at Ticonic Land Mark, thence running westerly on the southerly line of Silver Street to land of Jeremiah Furbush; thence southerly on the easterly line of said Furbush and the same course continued to land occupied by David Shorey; thence easterly on the north line of land occupied by said Shorey (it being the J. M. Crooker Store lot) to the west line of Main Street; thence northerly on the west line of Main Street to the point begun at."

The defendant claims that the east line of the Furbush lot, at the time of this deed, was located where the east line of the wall of the plaintiff's building now is and that that line extended would strike the land of David Shorey, owned by him at the date of the deed, and which he had purchased November 25, 1865, and on which the Parent building was erected in 1909; and so the triangle was included in the Bank's lot and conveyed to the defendant by the successive deeds of the lot.

The plaintiff claims, on the other hand, that the east line of the Furbush lot was the line of three lots which together made up one lot formerly owned by Cynthia Ellis and that the descriptions in deeds given by predecessors in title to Furbush definitely located that line; that the west wall of the defendant's building was erected by the Bank in 1877, about ten years after it acquired title by the above deed and that the wall was built over on the Furbush lot; that the Furbush lot, except as occupied by the wall, is now owned by the plaintiff and that it included the northerly part of the triangle; that the rest of the triangle was south of the Furbush lot and west of its east line extended to the Shorey land and was not conveyed to the Bank but retained by Esty and Kimball, and, except so far as a part of it has been built over by the defendant's wall, the plaintiff has title from Esty and Kimball.

The land in suit is in the above described southerly part of the triangle.

After full hearing, which included the examination of many conveyances and their interpretation in the light of the testimony of a competent civil engineer familiar with the premises and the old landmarks, as well as other explanatory oral testimony, the trial judge found that the division line between the property of plaintiff and defendant was located where plaintiff contended and that, therefore, plaintiff had record title to the property described in the writ. That finding cannot be disturbed by this court. The location of the division line on the face of the earth was a question of fact. It depended not only upon the construction of the various deeds submitted in evidence but as well upon the oral evidence by means of which the boundaries given in the deeds could be intelligently applied to the locus itself. There was evidence upon which to base the conclusion reached. Under such circumstances the decision of the court below is binding upon this court.

But the decision goes farther. After finding that plaintiff had record title to the disputed territory, the court below found that defendant had gained title thereto by adverse possession. It is to this branch of the case that plaintiff's exceptions are addressed. He insists that this finding, on which the final judgment against him is based, is unsupported by evidence.

The land described in the writ was the space occupied by the rollway in the rear of defendant's block and the space between the rollway and the Paganucci building.

The judge below found that "the rollway was built at the same time as the bank building in 1877 and that its walls were a continuation of the walls of the basement; that it was a part of the building, constructed to be used with it as an entrance into the building and so used; that the way to and from it was over the five or six feet space south between it and the reservation over the Shorey lot, which was reserved for a passage way, so used and kept open until 1909." Also that the rollway and the space adjoining it was used and occupied by defendant and his predecessors in title for a sufficient length of time and under such conditions and circumstances that "title to it by open, notorious and

adverse use and possession was obtained by successive owners of the Bank lot and building which title is now in defendant."

Defendant first went into occupation of the premises in 1910. He testified to the use of the rollway from then to the time of hearing in 1925; that he knew nothing about the matter prior to 1910 although he believed, from the appearance of the wall, that the rollway was built as a part of the original building in 1877. Another witness testified that he had known the block from the time it was built and he "did not recognize any change in its exterior lines." Another witness testified that, as a tenant, he occupied the block now owned by defendant from 1889 to 1908, that the rollway was then there but that during that period it was not used by him nor so far as he knew by anyone else. It is upon this evidence that the conclusion to which exception is taken was based.

One who seeks to overcome a record title by a claim of title by adverse possession assumes the burden of proof. *Magoon* v. *Davis*, 84 Me., 178; *Batchelder* v. *Robbins*, 95 Me., 67; *Webber* v. *McAvoy*, 117 Me., 329; *Bradstreet* v. *Winter*, 119 Me., 30; *Webber* v. *Barker*, 121 Me., 263.

Whether or not on the evidence quoted above it could fairly be said that the finding complained of was justified, we are not called upon to decide because the defendant himself, on cross-examination, absolutely eliminated this defense. He unqualifiedly stated that he only intended to occupy to the true line wherever that line might be. He could gain no title by such occupation. One who by mistake occupies for twenty years, or more, land not covered by his deed, with no intention to claim beyond his actual boundary wherever that may be, does not thereby acquire title by adverse possession to land beyond the true line. The intention of the possessor to claim adversely is an essential ingredient in disseizin. *Preble* v. *R. R. Co.*, 85 Me., 264, and cases sited.

The occupation by defendant, of the demanded premises, in the light of his testimony, could not give him title and nothing appears in the evidence to indicate that his predecessors in title, if they occupied the disputed territory at all, occupied under any different conditions.

*Exceptions sustained.*