Ezzetta D. McMULLEN, et al.

v.

David C. DOWLEY, et al.

Supreme Judicial Court of Maine.

Argued March 9, 1984.

Decided Oct. 22, 1984.

Alan D. Graves (orally), Machias, for plaintiff.

Francis J. Hallissey (orally), Machias, for defendant.

Before McKUSICK, C.J., and VIOLETTE, WATHEN and GLASSMAN, JJ., and DUFRESNE, A.R.J.

VIOLETTE, Justice.

In May 1978, plaintiffs, McMullen, Bagley, Flaherty, Tinney and Grant brought this action against the Dowleys to quiet

title to a tract of woodland in Roque Bluffs. The Dowleys answered and counterclaimed, asserting that they and their predecessors had established title through adverse possession under 14 M.R.S.A. §§ 801, 815 or 816 (1980). The case was tried without a jury in Superior Court, Washington County, as a declaratory judgment on the Dowleys' counterclaim. After trial, the justice issued an opinion dated July 16, 1979, entered judgment for plaintiffs on their suit to quiet title and dismissed the counterclaim. We vacated that judgment in a prior opinion, *McMullen v. Dowley*, 418 A.2d 1147 (Me.1980), because the trial justice misapplied part of the holding of this Court in *Stewart v. Small*, 119 Me. 269, 110 A. 683 (1920), and in so doing, cut off proper consideration of the Dowleys' adverse possession claim.[1] On remand, the Superior Court, without further hearing, again rendered judgment for plaintiffs in a decision dated June 30, 1983, finding that the Dowleys and their prede-

cessors entered and remained on the disputed land by mistake, without the requisite intent to establish title by adverse possession.[2]

 A detailed statement of the facts upon which the Dowleys base their claim is provided in our earlier opinion, 418 A.2d at 1149–51, and need not be repeated here except to the extent that the testimony adduced at trial relates to the findings made by the justice in support of his conclusion that the Dowleys and their predecessors lacked the intent to claim the subject property adversely. We note initially that neither the length of continuous occupation nor the extent, type, openness or notoriousness of use of the property by the Dowleys or their predecessors is at issue in this case for the purpose of establishing their claim of adverse possession under 14 M.R.S.A. §§ 801 and 815 (1980).[3] The only issue we must decide is whether credible evidence of record supports the justice's finding that neither the Dowleys nor their

---

1. In *McMullen v. Dowley*, 418 A.2d 1147 (Me. 1980), we said:

 Reasoning that "ordinarily, by the nature of things, title by adverse possession cannot be acquired to wild lands or wood lots", the presiding justice then concluded that the defendants had totally failed to show adverse possession of the northern lot. He relied on the first resolution in *Stewart v. Small*, 119 Me. 269, 271, 110 A. 683, 684 (1920), in which, he said, "frequent wood cutting, building a camp, frequent fishing and hunting parties fell far short of showing an ouster of the true owner."

 After a careful review of the record on appeal, we conclude that the presiding justice erred in treating this case as if it were plainly controlled by the decision of the first issue in *Stewart v. Small, supra*. There are important distinguishing features, full consideration of which might have led to a different result if the presiding justice had not regarded *Stewart v. Small, supra* as controlling in the characterization of the conduct of the Dowleys and their predecessors with respect to the northern lot.

 418 A.2d at 1151–52 (footnote omitted).

2. The legal basis for the trial justice's first decision differs from that of the decision presently on appeal. In the first decision the justice denied the adverse claim on the ground that the property in question was wild land and that the

adverse claimants failed to demonstrate that their and their predecessors' use of the subject property was appropriate and adequate for an owner of such land under the circumstances.

3. Sections 801 and 815 provide as follows:

 § 801. *Rights of entry and action barred in 20 years*

 No person shall commence any real or mixed action for the recovery of lands, or make an entry thereon, unless within 20 years after the right to do so first accrued, or unless within 20 years after he or those under whom he claims were seized or possessed of the premises, except as provided in this subchapter.

 § 815. *Forty years' possession bars action for recovery of land*

 No real or mixed action for the recovery of lands shall be commenced or maintained against any person in possession thereof, when such person or those under whom he claims have been in actual possession for more than 40 years, claiming to hold them by adverse, open, peaceable, notorious and exclusive possession, in their own right.

 In our prior opinion we held that the justice properly rejected the Dowleys' claim under 14 M.R.S.A. § 816 (1980), because the deed upon which the Dowleys based their claim under section 816, could not be read to include all the property they claimed.

predecessors occupied the property with adverse intent. *Gagne v. Cianbro Corp.,* 431 A.2d 1313, 1317 (Me.1981). If the record offers such support, the justice's finding is not clearly erroneous and will be upheld on appeal. *Forbes v. Wells Beach Casino, Inc.,* 409 A.2d 646, 651 (Me.1979); *O'Halloran v. Oechslie,* 402 A.2d 67, 69 (Me.1979); M.R.Civ.P. 52(a). In the instant case, however, no reasonable interpretation of the evidence would lead a factfinder to conclude that the Dowleys and their predecessors lacked the intent to hold the subject property adversely. Accordingly, we sustain the appeal and remand the case to the Superior Court for an entry of judgment for the Dowleys on their counterclaim and against plaintiffs on their suit to quiet title.

■ There is no question that to prevail on their claim the Dowleys have the burden of establishing all the elements of adverse possession including the element that they, as well as their predecessors, occupied the subject property with adverse intent. *Tallwood Land and Development Co. v. Botka,* 352 A.2d 753, 756 n. 2 (Me.1976); *Webber v. McAvoy,* 117 Me. 326, 329, 104 A. 513, 514 (1918). The trial justice concluded that the Dowleys failed to carry this burden because 1) no evidence of record established that the Dowleys or any of their predecessors knew the exact location of the boundary described in their deed, 2) one of the Dowleys' predecessors "was not prepared to [testify that he] claimed the land against the world regardless of the deed," and 3) the Dowleys and their predecessors "paid the taxes on [the subject lot] by mistake of the assessors." In reaching his conclusion that the Dowleys failed to establish their adverse claim, the justice misread the evidence of record and exhibited a misunderstanding of the law of mistake as it relates to an adverse possession claim.

■ The justice's finding that neither the Dowleys nor their predecessors knew the location of the boundary described in their deed constitutes a finding that the Dowleys and their predecessors entered and remained on the subject property by

mistake. This fact, however, is not determinative as to whether the Dowleys' adverse claim is sustainable. Our Court has recognized that "[i]t is not unusual for an adverse possession to begin under a mistake as to title, perhaps it is so in most cases where a party is honest." *Richardson v. Watts,* 94 Me. 476, 487, 48 A. 180, 185 (1901), quoting *Ricker v. Hibbard,* 73 Me. 105, 107 (1881). The test is the intention to hold adversely against all persons, not the mistake of entry. *Id.; Hitchings v. Morrison,* 72 Me. 331, 334 (1881); *Abbott v. Abbott,* 51 Me. 575, 584 (1863). Similarly, subsequent occupation by mistake is not determinative as to whether an adverse claim is sustainable absent evidence that the occupier intended to hold the property only if he were in fact legally entitled to it. Such an occupation would be "conditional" and could not form the basis of an adverse possession claim. *See Landry v. Giguere,* 127 Me. 264, 268, 143 A. 1, 2–3 (1928) (intention to hold only to true boundary wherever that boundary might be defeats claim of one seeking title by adverse possession to land beyond the true boundary). The finding by the justice, therefore, that the initial entry and subsequent occupation was made by mistake, without more, is not probative of the intent of the Dowleys or their predecessors and does not defeat their adverse claim.

■ In his opinion, the presiding justice cited part of the testimony of Raymond Clark, an heir of Lowell Smith through whom the Dowleys claim title, as support for his conclusion that the Dowleys and their predecessors lacked the intent to occupy the subject lot adversely. Responding to a hypothetical question posed by the Dowleys' attorney as to whether he would have "turned over" the subject property to one of the plaintiffs upon demand during the period he maintained an interest in the property, Clark stated, "Well, [the plaintiffs] would have had to come up with a pretty good reason why they claimed it was theirs after all this time." We fail to perceive how this testimony supports the jus-

tice's conclusion that the Dowleys and their predecessors occupied the property without an intent to hold it adversely.

On cross-examination, Clark testified as follows:

PLAINTIFFS' ATTORNEY: Which way do you claim it:

. . . .

THE WITNESS: I don't know, if I maintain a piece of property for forty years, whether a deed or not, I think I would try to hang onto it.

. . . .

Q. My question is Raymond, how do you maintain that you owned this property, was it under this deed as the complaint says in that regard, or was it because that you maintain that your family occupied the property?

A. We always worked it, even if I hadn't seen this deed, I would just keep on going the way it was.

Q. It has nothing to do with the deed?

A. No.

Q. Your claim is not based on this deed at all?

A. Well I always thought this deed would include the whole thing, but if the deed wasn't there, and I worked the whole thing all this time, I still claimed I own the whole thing.

. . . .

Q. Then, the question is, if somebody showed you a good reason that you didn't own this, you would have said, that is too bad, and I guess I lost a piece of land, is that correct?

A. Well, I mean, I think I would probably had a—they would probably have to do more than say they owned it, they would have to go to court and prove it.

Q. That's right. If it could have been shown to you you would have accepted it?

A. We would have had to go to court before I'd accept it, probably.

Q. I see. The only way that you would have given it up would be to go to court?

A. Right.

Clark's testimony simply cannot reasonably be interpreted as supporting a finding of a lack of adverse intent on the part of the Dowleys or their predecessors to hold the subject property against all others. Neither Clark's nor any other witness's testimony reasonably suggests that the Dowleys or their predecessors intended to hold the subject property conditionally.

Finally, the justice found that the Dowleys and their predecessors paid the taxes on the subject property by "mistake of the assessors" and concluded that the fact that such taxes were paid added no "significant weight" to the Dowleys' adverse claim because the tax bills did not contain a description of the property taxed. The finding that the taxes were paid by "mistake of the assessors" is completely unsubstantiated because no evidence of record indicates the manner in which the town assessors arrived at the description of the parcel taxed to the Dowleys and their predecessors. In fact, the tax assessment records in evidence clearly describe the disputed property as that property taxed to the Dowleys and their predecessors. The fact that the tax bills themselves did not describe the subject property does not diminish the importance of the payment of the taxes to the Dowleys' adverse claim of title. *See Holden v. Page,* 118 Me. 242, 107 A. 492 (1919) (payment of taxes, though not probative of possession, tends to prove claim of title).

As we stated in our earlier opinion:

The evidence was strong that Smith and his successors used the lot as owners, not in subordination to superior title in anyone else. They paid all taxes on the lot, and former town officials testified that Lowell Smith and his successors always referred to the lot as theirs. The appellees did not testify, and there is no evidence that they or their predecessors ever exercised or attempted to exercise any control over the lot after 1914.

*McMullen,* 418 A.2d at 1154. Accordingly, we reverse, holding that the Dowleys have met their burden of establishing title to the subject property by proof of adverse possession. 14 M.R.S.A. §§ 801 and 815 (1980); *see Batchelder v. Robbins,* 95 Me. 59, 49 A. 210 (1901).

The entry is:

Judgment reversed. Remanded to the Superior Court for entry of the following judgment:

The plaintiffs-counterclaim defendants, Ezzetta D. McMullen, Richard W. Bagley, Ruth Flaherty, Josie Tinney and Emmie Grant, take nothing by this action. The defendants-counterclaim plaintiffs, David C. Dowley and Jane H. Dowley, are vested with title to land and real estate in fee simple described as follows: The land in Roque Bluffs, Washington County, Maine: Bounded Northeasterly by Lot No. 25; Southeasterly by a lot described in a deed from Herman L. Davis to Lowell F. Smith dated February 29, 1914 and recorded in the Washington County Registry of Deeds in Book 312, Page 368; Southwesterly by the road leading from Jonesboro to Roque Bluffs; and Northwesterly by land heretofore of Elizabeth Tuttle and now or formerly owned or occupied by Martin Van Buren Smith.

All concurring.