**Stanley M. EMERSON, et al.**

v.

**MAINE RURAL MISSIONS
ASSOCIATION, INC.**

Supreme Judicial Court of Maine.

Argued May 8, 1989.
Decided May 30, 1989.

Alton C. Stevens (orally), Marden, Dubord, Bernier & Stevens, Waterville, for plaintiffs.

Charles W. Hodsdon, II (orally), Bangor, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

The defendant, Maine Rural Missions Association, Inc. (MRM), appeals a judgment granting title by adverse possession to disputed property to the plaintiffs, Stanley and Lois Emerson, after a nonjury trial in Superior Court (Penobscot County, *Beaulieu, J.*). We affirm the judgment.

## I.

In 1957 the Emersons purchased a house and garage, and the property on which they stood on Essex Street in Bangor, from Myrtle Elizabeth Carson. In 1961, they purchased an additional adjoining parcel from Ferdinand and Laura Glenk. In 1963, Reverend Arlington Booker, president of MRM, requested that the Emersons sell to MRM a portion of this real property on Essex Street. Although the Emersons initially refused, they sold MRM a portion of their land in 1963 after arranging to purchase a second parcel from the Glenks, which they did in 1964. This dispute arose in 1986 when the Emersons discovered that MRM was claiming title to a parcel of land that the Emersons believed they owned and never intended to sell in the 1963 sale.

## II.

Possession that is sufficient to convey title by adverse possession must be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years." *Glover v. Graham*, 459 A.2d 1080, 1084 n. 7 (Me.1983) (citing *McMullen v. Dowley*, 418 A.2d 1147, 1152 (Me.1980) (*McMullen I*)). The constituent elements of adverse possession must be established by clear proof of acts and conduct fit to put a man of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly and exclusively held by a claimant in antagonistic purpose.[1] *Stewart v. Small*, 110 A. 683, 684, 119 Me. 269, 271 (1920). Whether specific possessory acts are sufficient to establish title through adverse possession can only be resolved in light of the nature of the land, the uses to which it can be put, its surroundings, and various other circumstances. *McMullen I*, 418 A.2d at 1154. We will affirm a presiding justice's determination of adverse possession if supported by credible evidence in the record and not clearly erroneous. *McMullen v. Dowley*, 483 A.2d 698, 699–700 (Me.1984) (*McMullen II*).

In the case at hand we find credible evidence in the record to support the presiding justice's finding of adverse possession. First, actual possession is established when the evidence shows an actual use and enjoyment of the property that is in kind and degree the same as the use and enjoyment to be expected of the average owner of such property. *Howe v. Natale*, 451 A.2d 1198, 1200 (Me.1982). The Emersons testified that since the 1961 purchase their uses of the property have included filling a portion of it onto which they have extended their driveway and built a new garage; planting a garden, raspberry bushes, and trees; storing trucks and equipment and parking cars and campers; picnicking; and allowing their grandchildren to play and snowmobile on the area.

1. The burden of establishing title by adverse possession is on the party alleging it. *McMullen I*, 418 A.2d at 1152 n. 5.

Given this evidence, we cannot conclude that the presiding justice's finding of actual possession is clearly erroneous.

■ Second, adverse possession requires that acts of possession be sufficiently visible and notorious so as to provide the real owner with notice of the possessor's hostile intent. *Webber v. Barker*, 116 A. 586, 588, 121 Me. 259, 264 (1922). Such notice need not be actual, *Holden v. Page*, 107 A. 492, 494, 118 Me. 242, 247 (1919); it is sufficient to prove acts so open and notorious that the owner's knowledge of them and of their adverse character may be presumed. *Id.* The Emersons activities as described above are such that MRM may be presumed to have notice of their possession. It is hard to imagine more visible activities than trucking in fill, smoothing it out with bulldozers, planting gardens, bushes, and trees, parking cars and trucks, picnicking, and snowmobiling.

Third, because the Emersons became aware of MRM's claim to the disputed area in February 1986, their use of the property must have commenced no later than February 1966 in order to satisfy the twenty-year period requirement. Mr. Emerson testified that he began filling in the land in 1961 or 1962, after he purchased it from the Glenks; that he has been adding to it since 1963 when he sold the land to MRM; and that he last brought in fill in early 1987. Mrs. Emerson also testified that they have been filling in the area since purchasing it in 1961.

■ Fourth, in order to be adverse, the nature of the overt acts must leave no question as to the intention to oust the owner from possession and ownership. *Glover*, 459 A.2d at 1085. It is not unusual for an adverse possession to begin under a mistake as to title. *McMullen II*, 483 A.2d at 700. However, occupation by mistake is not determinative as to whether an adverse claim is sustainable absent evidence that the occupier intended to hold the property only if he were in fact legally entitled to it. Such an occupation would be "conditional" and could not form the basis of an adverse possession claim. *Id.* (citing *Landry v. Giguere*, 127 Me. 264, 268, 143 A. 1, 2–3 (1928)). If, on the other hand, a party claiming through mistake has an absolute intent to claim the land, his possession is adverse to the true owner. *Tallwood v. Botka*, 352 A.2d 753, 756 n. 2 (Me.1976). In the present case, Mr. Emerson's testimony that he would still be claiming title to the disputed area even if he were told that the disputed area was not his land; and that although he does not recall signing the deed that conveyed the property, even if he did, he still intends to claim the land conveyed, evinces the requisite "absolute intent" necessary to constitute adverse possession.

■ Fifth and finally, the record supports a conclusion that the Emersons used the disputed area exclusively. The Emersons testified that they have never seen anyone from MRM on the disputed area, and that no one from MRM has ever disputed their use of the area. Although Lloyd Rozelle, the current president of MRM, testified that he had been on the land in question several times, there was no suggestion that he or anyone else from MRM used it in any way.

Contrary to MRM's contention, we find no clear error in the Superior Court's determination that the Emerson's title by adverse possession encompasses the entire parcel in dispute. The Emersons testified that they believed they owned, and never intended to sell, the disputed area. Although MRM correctly points out that the Emersons filled in only a portion of the area, the evidence indicates that the Emersons engaged in several of the other activities discussed above on the remainder of the property.

The entry is:

Judgment affirmed.

All concurring.