<hr/>

JOHN F. PROCTOR *vs.* FRED E. LIBBY et al.

Cumberland. Opinion December 20, 1912.

*Adjoining owners. Adverse possession. "Clapp lines." Conventional line. "Deed lines." Deed. Description. Estoppel. Fence. Monuments. Muniments of title. Records.*

This is an action of trespass quare clausum, the tract in question being a triangular lot about five feet wide at the base with side lines about twenty-seven feet long, situated between Free street and Congress street in the city of Portland, and in rear of Congress street stores.

The parties are adjoining owners, and the issue is the true line between their respective lots.

It is conceded that the record line between the lots is the line as claimed by the defendants, but the plaintiff relied for his title, first, upon a line established by agreement and by estoppel, and second, upon adverse possession.

*Held:*

1. That it is well settled that when a line is located and marked upon the face of the earth by the parties, and thereafterwards the line thus established is recognized and treated by them as the true line, it is conclusive

upon the parties and their assigns, although it is subsequently ascertained that this so-called conventional line varies from the one given in the deeds.

2. That the establishment of this conventional line by the parties was a question of fact for the jury.

3. That the claim of the plaintiff that the defendants were estopped from denying that the fence was on the true line because of an alleged statement to that effect made to the plaintiff by the defendants' predecessor in title at some time prior to the plaintiff's purchase also rests upon the question of fact whether such a statement was made. This also was for the jury to determine, and the evidence of the conversation comes from a deeply interested party and was uncorroborated. Muniments of title are not to be lightly set aside, and testimony to overcome a record title should be full, clear and convincing.

4. That the evidence of open, notorious, exclusive, uninterrupted and adverse possession for more than twenty years was not so strong as to require the court to set aside a verdict to the contrary.

On motion by plaintiff. Overruled.

This is an action of trespass quare clausum against Fred E. Libby and Sarah A. Libby for wilfully breaking and entering the plaintiff's close, described as a certain lot of land with buildings thereon, situated on the northerly side of Free street in Portland, and erecting a wall and a portion of a brick building on said premises, etc. Plea, general issue and brief statement as follows: And for a brief statement of special matter of defense to be used under the general issue pleaded, the said defendants further say; that the defendants deny that the plaintiff at the time of bringing of said suit had the possession of the premises described in his writ as against these defendants and they also deny that the plaintiff had any title; that the premises described in the writ and declaration of the plaintiff are not the property of said plaintiff, but are now and were at the date of plaintiff's writ and prior thereto, the property and freehold of the said defendants. The jury returned a verdict for the defendants and the plaintiff filed a general motion for a new trial.

The case is stated in the opinion.

*Symonds, Snow, Cook & Hutchinson,* for plaintiff.

*Wilbur C. Whelden, and Foster & Foster,* for defendants.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING, HALEY, JJ.

CORNISH, J. This is an action of trespass quare clausum, the tract in question being a triangular lot about five feet wide at the base with side lines about twenty-seven feet long, situated between Free street and Congress street in the city of Portland and in rear of Congress street stores. The jury having found for the defendants, the case is before the Law Court on plaintiff's motion for a new trial.

The parties are adjoining owners and the issue is the true line between their respective lots.

So far as the record title goes, the deeds introduced by the plaintiff, beginning in 1886, and those by the defendant, beginning in 1866, show conclusively that a line run according to their calls would leave the triangle as a part of the defendants' land. The plaintiff's surveyor testified unequivocally that from an examination of all the deeds he found that the line as claimed by the defendants, the "Clapp line," so called, was the "deed line" between the two properties.

This "Clapp line," after running several courses, passes "thence northeasterly by said McCarthy's land twenty-six feet to land now or formerly belonging to George H. Cushman; thence southeasterly by the line of said Cushman's land and line of land belonging to C. D. Livermore to said Free Street." This is the description in all the deeds, and it is this last call, "Line of land belonging to C. D. Livermore" over which the controversy arises, the defendants having succeeded to the land that C. D. Livermore formerly owned.

The record line being in the defendants' favor, the plaintiff relies for his title:

First, upon a line established by agreement, and by estoppel;

Second, upon adverse possession.

We will briefly consider these in their order, without entering upon a discussion of the evidence with too great detail.

The propositions of law involved are not seriously in controversy, and the only issues before this court are those of fact.

1. A line established by agreement and by estoppel.

The plaintiff claims that when a line is located and marked upon the face of the earth by the parties, and thereafterwards the line thus established is recognized and treated by them as the true line, it is conclusive upon the parties and their assigns, although it be subsequently ascertained that it varies from the one given in the deed. This is sometimes termed a conventional line and the plaintiff's contention as to the recognition of the validity of such a line in law is sound. *Hathaway* v. *Evans,* 108 Mass., 267; *Orr* v. *Hadley,* 36 N. H., 578; *Davis* v. *Judge,* 46 Vt., 655; *Knowles* v. *Toothaker,* 58 Maine, 172. In these cases, however, the parties by uncontradicted agreement and by positive acts such as running the line, establishing monuments, building a fence, and subsequent occupancy up to the conventional line and no further, left no room for doubt as to their intention, and the law simply enforced that intention. The defendants claim that the weakness of the plaintiff's evidence on this point is the absence of both the agreement and acts in furtherance of such agreement.

It is true that for more than thirty years a fence had existed on what the plaintiff claims to be the agreed line, extending back from Free Street, to the corner of a building on the Livermore lot, and that the side of the building formed a continuation of the line for some distance along the easterly side line of the triangular lot in question, the balance of that line being unfenced. This was undoubtedly an apparent boundary line so far as it went, but it was for the jury to say under all the facts of the case how much weight the existence of the fence, on what was admittedly not the true record line, had as to its constituting a line actually agreed upon by the parties. The existence of a fence on a wrong line is not conclusive proof that it stands upon an agreed line.

In addition to this, the plaintiff testified that prior to his purchasing the property, one Glazier, the trustee of the Clapp estate, pointed out this fence as the true boundary and that on another occasion, but also prior to his purchase, Mr. Livermore, a predecessor in title to the defendants, "came out of his house on his own land, came along to his fence and said that was the fence line, that was the line he bought his property by," and "claimed the fence line was his property line."

Here, again, it was for the jury to determine whether these conversations actually took place. The evidence is uncorroborated. It comes from a deeply interested party. Glazier and Livermore are both dead. While this testimony might in the first instance have great weight with the court, we are not of the opinion that its rejection by the jury was manifestly wrong. Muniments of title are not to be lightly set aside, and testimony to overcome a record line should be full, clear and convincing, and should be scanned with care and caution. It nowhere appears by whom, or under what conditions or for what purpose the fence was built; no agreement between owners is proved, simply the inference to be drawn from the maintenance of the fence itself.

If the old fence marked the true line, then a small triangle on Free street was taken from the plaintiff's lot and given to the defendants, because the deed line and the fence line intersected. This triangle, however, the defendants do not claim.

Again, the projection of the fence line toward the rear of the stores on the north would create a jog and call for three courses instead of one in all deeds subsequent to the making of the conventional line, and instead of reading "thence southeasterly by the line of said Cushman's land and line of land belonging to C. D. Livermore to Free street," they should have read "thence southeasterly by the line of said Cushman's land; thence easterly by the line of said Cushman's land; and thence southerly by line of the land of C. D. Livermore to Free street." Yet the original description was followed in all subsequent deeds, and the alleged conventional line was never recognized in them.

In this connection, the plaintiff claims that the defendants are estopped from denying the fence line because of the conversation between Livermore and himself already recited, which took place prior to the plaintiff's purchase and on the strength of which he claims to have made his purchase, and he relies upon *Louks* v. *Kenniston*, 50 Vt., 115, as conclusive upon this point.

The legal doctrine of estoppel in pais has been recognized and fully discussed in many cases in this court, and needs no further elaboration. *Martin* v. *Maine Central R. R. Co.*, 83 Maine, 100; *Rogers* v. *Street Ry.*, 100 Maine, 86; *Stubbs* v. *F. & M. Ry. Co.*,

101 Maine, 355. The crucial question usually is, do the facts warrant the application of the principle?

In *Louks* v. *Kenniston,* supra, so confidently relied upon by the plaintiff, the defendant, who owned land adjoining land that plaintiff was about to buy, told the plaintiff that a certain fence was on the true boundary line, and the plaintiff relying upon this statement bought the land. The court held that the defendant was estopped to deny that the fence was on the true line.

That decision is undoubtedly sound, but it should be noted that in that case the suit was between the very parties who had held the conversation. The defendant whose statement was relied upon was still living and in court. He was the person estopped, not a remote grantee from him, and it might perhaps well be doubted whether such remote grantee, who is a bona fide purchaser for value and without notice, but relies upon the record title, would be also estopped.

Passing this point however, without deciding it, it should be observed in the second place that there was no doubt about the representation having been made in the Vermont case. That fact was conceded. While in the case at bar, as has been said before, the only evidence of that fact comes from the plaintiff himself. The credibility of his statement was for the jury and their finding on that issue we are not disposed to set aside.

. So far then as the conventional line or line by estoppel is concerned, we cannot say that the verdict is glaringly wrong.

2. Adverse possession.

The plaintiff's evidence on this branch of the case is even less strong than on the other. Open, notorious, exclusive, uninterrupted and adverse possession for more than twenty years was not made out. While the plaintiff and his predecessors in title had made use of the disputed tract, so had the defendants and their predecessors, and also outside parties, as this was used more or less as a thoroughfare for people having occasion to go from Free street to the rear of stores on Congress street.

The plaintiff claims to have received rent during the past ten years for a portion of the lot; but, if so, it is not shown that the owners of the defendants' lot ever had any knowledge of the fact.

The sides of the triangle were never fenced and a fence placed across the base about eight years after the plaintiff took title in himself was torn down by the defendants. It is significant also that the plaintiff erected a small building on his premises close to this triangle, but not over the line.

Many other facts and claims on the one side and the other might be referred to, but it is unnecessary. It is sufficient to say that a critical study of all the testimony has failed to convince us that the jury, in deciding that the plaintiff had not gained title by adverse possession, were controlled by bias or prejudice, or that they failed to comprehend the issues involved.

The case was carefully tried on both sides, the legal principles were fully stated to the jury in a charge to which no exceptions were taken. Only questions of fact are before us, and on these the evidence is conflicting. While the issue is not free from doubt, yet in view of the fact that the record title is in the defendants, the verdict in their favor upon the claims presented is not so manifestly wrong that it should be set aside.

*Motion overruled.*