CHARLES P. WEBBER, et als., *vs.* RICHARD MCAVOY.

Penobscot.    Opinion August 21, 1918.

*Deeds.    Mortgages.    General rule as to adverse possession.    Burden
of proving title by adverse possession.*

An action of trover for the recovery of damages for the conversion of certain logs cut from the locus described below, in the year 1909 and 1910.    The parties admit that the alleged conversion was of lumber cut from the sixty acres lying next easterly of a one hundred acre lot located in the southwestern portion of Benedicta, or the west corner of lot No. 1, according to Caleb Leavitt's plan.

*Held:*

1.    To maintain an action for the conversion of logs, plaintiffs must establish that they had either actual or constructive possession of the premises.    If they did not have the title, they must show actual possession, the gist of the action being the invasion of the plaintiff's possession.

2.    Where the plaintiff claims title and possession under a mortgage with full covenants of warranty which has been fully foreclosed, such warranty deed and deraignment of title thereunder afford prima facie evidence of title and seizure and entitle the plaintiff to recover against a mere trespasser, or one who cannot prove better title than the mortgagor, who had no title.

3.    Evidence to the effect that the mortgagor giving such mortgage received from the mortgagee his quitclaim deed of same date as the mortgage, of all the right, title and interest of the grantor in the same property described in the mortgage, falls far short of proving no title in the plaintiff or party holding under the foreclosed mortgage, or that his title is inferior to that of the defendant who claims title by adverse possession.    Such quitclaim deed conveys, it is true, only the grantee's right, title and interest but it by no means proves that the grantor did not possess a complete and impregnable title. If the fact be otherwise the defendant must proceed further with his proof.

4.    The burden of proof of title by adverse possession is upon him who alleges it.

5.    In proof of adverse possession of the locus by the defendant, he produced evidence tending to show acts of occupation in 1862, in 1878, in 1890, in 1895 and in 1902, but it is the conclusion of the court that the defendant fails to show thereby that continuity of possession or occupation which is required by the common law or which comports with the ordinary management of a farm. . They appear, rather, to be acts of trespass long separated in time and fugitive in nature.

Action of trover to recover the value of certain logs converted by defendant. Defendant filed plea of general issue. At close of testimony, case was reported to Law Court to render such judgment as the law and evidence require. Judgment for plaintiff. Case stated in opinion.

*Ryder & Simpson,* for plaintiff.

*Bertram L. Smith, and E. A. Atherton,* for defendant.

SITTING: SPEAR, BIRD, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

BIRD, J. On report. An action of trover for the recovery of damages for the conversion of certain logs cut from the locus described below in the years 1909 and 1910. "It is admitted that the alleged conversion was of lumber cut upon the sixty acres lying next easterly of a one hundred acre lot located in the Southwestern portion of Benedicta or the west corner of lot No. 1, according to Caleb Leavitt's plan."

As the right to the logs depends upon the possession of the locus from which they were cut, the plaintiffs, to maintain the action, must show that, at the time of the alleged conversion, they had either actual or constructive possession of the premises. If they did not have the title, they must show actual possession; the gist of the action being the invasion of the plaintiff's possession. This is familiar law. *Thurston* v. *McMillan,* 108 Maine, 67, 68; *Stevens* v. *Gordon,* 87 Maine, 564, 566, 567; III Wash., Real Prop., Sec. 1945.

The plaintiffs claim title and possession under a mortgage with full covenants of warranty given by Fayette Shaw and others to the Bishop of the Diocese of Portland. This deed of mortgage, in terms, includes the locus or sixty acre lot. The mortgage has been fore-closed and the title thereunder, by reason of certain assignments and other mesne conveyances, is in the plaintiffs. Such being the case the warranty deed and deraignment of title thereunder are prima facie evidence of title and seizure and entitle the plaintiffs to recover against a mere trespasser or against one who cannot prove better title or that the mortgagor had no title. *Thurston* v. *McMillan,* 108 Maine, 67, 71, 72; *Smith* v. *Sawyer,* 108 Maine, 485, 487; *May* v. *Labbe,* 112 Maine, 209, 210; *Smith* v. *Booth Bros., etc., Co.,* 112 Maine, 297, 306; See also *Chandler* v. *Wilson,* 77 Maine, 76, 82.

The defendant in disparagement of the plaintiffs' title offers the quitclaim deed of the Bishop of the Diocese of Portland to Fayette Shaw and others, of the same date as the mortgage given by the latter and already referred to, and to which reference is made in the mortgage, of all the right, title and interest of the grantor in the same property described in the mortgage given by the grantees to the grantor. This deed falls far short of proving no title in plaintiff or a title inferior to that of defendant, whose claim of title is considered later. The deed conveys, it is true, only the grantor's right, title and interest, but it by no means follows that the grantor did not possess a complete and impregnable title. If the fact be otherwise, the defendant must proceed further with his proof. See *Jones* v. *Webster Woolen Co.*, 85 Maine, 210. The situation of the plaintiff is not that of the defendant in *Thurston* v. *McMillan*, 108 Maine, 67, 72. Nor do we find in the reference in the deed of mortgage to the deed of Shaw, et als., to the Bishop of Portland, aught but assistance to determine the source of title, not an intention to determine the quantity or quality of title. *Perry* v. *Buswell*, 113 Maine, 402.

The defendant shows no title by deed but claims title by adverse possession and that the sixty acre lot or locus was and is a part of a lot originally laid out as a one hundred and sixty acre lot, the other one hundred acres, constituting the remainder of such one hundred and sixty acre lot, lying westerly of the sixty acre lot. The evidence does not satisfy the court that the one hundred and sixty acres in question were laid out in one lot but rather that they constituted two lots; one of one hundred acres and another of sixty, or more, acres.

The evidence tends to show that the grandfather of defendant settled upon the one hundred acre lot in the southwest corner of Benedicta, cleared and cultivated about forty acres of land upon its westerly side, and that at his death in 1853, there had been built upon it a log house, a barn and other outbuildings, all of which had disappeared at the time the case was reported. The easterly line of the one hundred acre lot does not appear to have been indicated or established upon the face of the earth, nor do we find the contention of the defendant that the easterly line of the sixty acre lot was so established sustained by a preponderance of the evidence. Neither the one hundred acre lot nor the sixty acre lot were enclosed by fences and both were wild and uncultivated lands, except the westerly forty acres of the former which are now partly grown up to trees or

bushes. Upon the death of the grandfather his son, Thomas McAvoy, second, took possession of and occupied the one hundred acre lot until his death in 1886. Since the latter date the defendant, son of Thomas McAvoy, second, appears to have occupied and used the one hundred acre lot as his own, or quoting his own language has "worked it off and on all his life time," claiming title by gift from his father, and not only to the hundred acre lot but also to the alleged sixty acre lot adjoining. *Martin* v. *M. C. R. R. Co.*, 83 Maine, 100, 103. The plaintiffs make no claim to the one hundred acres.

Upon the 60 acre lot there is evidence of a witness, then ten years old, that in 1862 the father of defendant cut "quite a large amount of pine." There is also evidence tending to prove that in 1878 the defendant, then a boy of fourteen, helped his father to haul cedar therefrom, the operation consuming a week's time; that in 1890 the defendant sold the stumpage for bark from the whole of the 160 acres; that in 1895 the defendant sold the stumpage of juniper knees upon the whole 160 acres (but there is no evidence that any bark or knees were removed from the 60 acre lot, under these permits or licenses); that in 1902 the defendant cut cedar from the south-easterly corner of the 60 acre lot and thence westerly to the westerly line of the 100 acre lot, cutting along the south line of the town. Defendant testifies that in his occupation of the premises he always worked up to the east line of the sixty acre lot. These are the only acts done by the father and defendant upon the locus, relied upon by defendant in his counsel's brief.

The burden of proof of title by adverse possession is upon him, who alleges it. *Batchelder* v. *Robbins*, 95 Maine, 59, 67; *Brown* v. *King*, 5 Met., 173, 180; *Lawrence* v. *Doe, etc.*, 144 Ala., 524, 527. Assuming the acts done upon the so-called sixty acre lot to have been adverse (*Alden* v. *Gilmore*, 13 Maine, 178, 182; *Morse* v. *Williams*, 62 Maine, 445, 446;) and that all were open and notorious, we think there is a failure to show that continuity of possession or occupation which is required by the common law or which comports with the ordinary management of a farm. In the mind of the court they appear rather to be acts of trespass long separated in time and fugitive in nature. *Rangeley* v. *Snowman*, 115 Maine, 412, 416; See *Little* v. *Megquier*, 2 Maine, 176, 178; *Tilton* v. *Hunter*, 24 Maine, 29, 33, 34; *Proprietors, etc.*, v. *Laboree*, 2 Maine, 275, 283; *Worcester* v. *Lord*, 56 Maine, 265, 269; *Fleming* v. *Paper Co.*, 93 Maine, 110, 113;

*Hill* v. *Coburn*, 105 Maine, 437, 446, 447; *Smith* v. *Sawyer*, 108 Maine, 485, 486; *Smith* v. *Booth Brothers*, 112 Maine, 297, 306; *Rollins* v. *Blackden*, 112 Maine, 459, 464, 465; *Daly* v. *Children's Home*, 113 Maine, 526, 528; See also *Roberts* v. *Richards*, 84 Maine, 1, 9, 10; *Adams* v. *Clapp*, 87 Maine, 316, 322. The law does not undertake to specify the particular acts of occupation by which alone a title by adverse possession can be acquired, Id. The following cases indicate what have not been considered such acts. *Frye* v. *Gragg*, 35 Maine, 29, 32; *Chandler* v. *Wilson*, 77 Maine, 76, 83; *Hudson* v. *Coe*, 79 Maine, 83, 93; *Richards* v. *Roberts*, 84 Maine, 1, 10; *Smith* v. *Sawyer*, 108 Maine, 485, 486.

The localities of the various acts of alleged occupation are not shown. Equally barren is the case of evidence that any one or more of such acts were upon the same locality. See *Proprietors of Kennebec Purchase* v. *Springer*, 4 Mass., 416, 418.

The conclusion is that the defendant has not sustained the burden of proof imposed upon him.

*Judgment for plaintiff for the sum of one hundred and twenty-five dollars, as agreed by the parties.*