Grace GLOVER

v.

Nelson & Betty GRAHAM

v.

Herbert and Elizabeth SHIRREFS

v.

Harold and Ruth OSGOOD

v.

Daniel and Nancy CHAPLIN.

Supreme Judicial Court of Maine.

Argued Jan. 11, 1983.

Decided April 26, 1983.

James W. Strong, Robert Levine (orally), Rockland, for Shirrefses.

Stanley W. Karod (orally), Camden, for Osgoods.

Donnelly S. Douglas (orally), Freeport, for Chaplins.

Before McKUSICK, C.J., and GODFREY, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ.

CARTER, Justice.

The defendants, Mr. and Mrs. Graham, appeal the judgment resulting from a jury trial in Superior Court (Knox County) of this property dispute. The judgment awards nominal damages, court costs, attorney fees, and the cost of professional services to the plaintiff and requires the Grahams to remove their garage and fence. We sustain the defendants' appeal as against plaintiff and remand for a new trial. We deny defendants' appeal from the trial court's entry of summary judgment adverse to them on their third-party complaint against the Shirrefses.

## Facts and Procedure

The Grahams own a parcel of land that is bounded on the south by the land owned by plaintiff Glover. Glover's complaint alleged that the Grahams had willfully trespassed on her property and damaged the property, in violation of 14 M.R.S.A. § 7552 (1980),[1] by erecting a chain fence and that the Grahams had interfered with the plaintiff's easement providing access to the ocean by erecting their garage north of the chain fence.

The Grahams filed a third-party complaint against the Shirrefses, the Grahams' immediate predecessor in title, based on warranty covenants. The Shirrefses commenced a third-party action against the Osgoods, the Shirrefs's immediate grantors, based on warranty covenants. The Osgoods

John J. Sanford (orally), Camden, for Glover.

Willard D. Pease, Wayne R. Crandall (orally), Rockland, for Grahams.

1. We note simply that there may be a difference between negligently or intentionally taking the action proscribed in that statute and taking such action under claim of right.

brought a similar third-party action against their immediate grantors, the Chaplins. The trial justice entered summary judgment in favor of the Shirrefses on December 21, 1981, and in favor of the Osgoods and Chaplins on June 9, 1982.[2]

At trial, the two principal issues involved (1) whether the location of the plaintiff's northern boundary line was, as she claimed, the "depression line" on which an old picket fence had been located or the more southerly line on which the defendant had erected a chain fence in 1978, and (2) whether the plaintiff had a right-of-way immediately north of her northern boundary. The testimony at trial established that the plaintiff had lived on what is now the Graham property from 1946 to 1960; the plaintiff owned that property from 1949 to 1960. The plaintiff's mother lived on and owned what is now the Glover property from 1943 to 1957 and devised that property to the plaintiff in 1957. A white picket fence had been located on the so-called depression line between the now Glover and Graham properties. In 1965, the picket fence was removed and a chain and rail fence was erected using the same post holes. A triangular-shaped piece of property, owned by the Smalls and, eventually, by their daughters, separated the Glover (now Graham) and North (now Glover) property at some point along the boundaries of these properties. The Chaplins bought the pie-shaped property in 1962. The plaintiff testified that she never claimed any part of this triangular-shaped property, although she did split the cost of this parcel with the Chaplins. The Old Ginn Point Road had also been situated to the north of the North property. The road separated at some point the Glover-Small-North properties until 1954, when the road was abandoned.

The plaintiff stated that although she was never sure of her boundaries or the description in her deeds, she intended to claim to the old picket fence because she thought she owned the property extending north to that fence. On the other hand, the defendant, Mr. Graham, was fairly sure of his boundaries. Although he had no professional title search conducted when he bought the house, he searched the title himself. Based on his research of the plaintiff's mortgage and real estate deeds, he determined that the plaintiff's northern boundary was not the old picket fence/depression line but was south of that line. As a result, the defendants told the plaintiff in 1978 that she could no longer use the claimed right-of-way as access to the beach or to park cars and bicycles. In 1978–79, the defendant moved the chain fence south of the previous location of the fence on the depression line and erected a garage on a portion of the land immediately north of the newly located chain fence.

The trial justice excluded as irrelevant the testimony of a surveyor concerning the location of the defendants' and plaintiff's boundaries. The defendants also offered the deed to the plaintiff's property, plaintiff's mortgage deeds, and seven deeds in the defendants' chain of title. The plaintiff's deed was admitted but the mortgage deeds were excluded.[3] The deeds in the defendants' chain of title were admitted, with no explanatory testimony by the surveyor, limited to the issue of whether the defendants willfully and knowingly trespassed. The trial justice maintained that the precise location of the boundaries was irrelevant to a claim based on adverse possession, as opposed to an action to quiet title.

At the close of the trial, the plaintiff moved for a directed verdict. The justice

2. Although a second justice purported to enter summary judgment in favor of the fourth and fifth-party defendants on December 16, 1981, the docket entry did not establish the disposition of the fourth-party complaint. The case was remanded on appeal to dispose of the pending claim. Final judgment was entered on June 9, 1982.

3. The mortgage deeds were offered to show that the plaintiff must have known that her property extended only forty-five and one-half feet north of her southern boundary.

found, as a matter of law, that (1) the plaintiff owned, by adverse possession or boundary by acquiescence, the land adjacent to, and southerly of, the "old fence line"; (2) the plaintiff had acquired a prescriptive easement to a thirteen-foot-wide strip of land adjacent to, and northerly of, the "old fence line"; (3) a trespass had, therefore, occurred by either the defendants' construction of the garage or their erection of the chain fence, depending on the jury's determination of the location of the "old fence line"; and (4) the plaintiff was entitled only to nominal damages of $100. The trial justice permitted the jury to determine only two issues: (1) whether the "old fence line" between the plaintiff's and defendants' property was the old picket fence/depression line and not the line on which the defendants' chain fence was now located and (2) whether the defendants' trespass was knowing and willful.

After a hearing on plaintiff Glover's motion for attorney's fees, pursuant to 14 M.R.S.A. § 7552, the justice ordered that (1) plaintiff Glover could recover $5,837.02, which included damages, costs, attorney's fees, and professional services necessary to determine damages; (2) the defendant Grahams must remove the chain fence and garage because both are located on the property determined to belong to the plaintiff; (3) plaintiff Glover is owner in fee simple absolute of the property south of the "depression line"; and (4) plaintiff Glover is entitled to a right-of-way over the thirteen foot easement. The defendant Grahams filed a notice of appeal to this Court on June 15, 1982. No other appeals were filed within the statutory time period. M.R. Civ.P., Rule 73(a). On the motions of the third-party defendants Shirrefses, et al., for a determination of status as parties to the appeal, this Court ruled that the motion would be heard with the merits of this appeal at argument.

## I. Summary Judgment for Third-Party Defendants (Shirrefses)

The warranty deed by which Shirrefses conveyed the property now owned by the Grahams states as the southern boundary of the property conveyed, the "land of Grace Glover." The deed contains no specific metes and bounds. The Grahams argue that the Shirrefses are accountable to the Grahams if Glover succeeds in her action because at the time of the Shirrefs's conveyance to the Grahams, the Glover deed, which defines by metes and bounds the location of the Glover land, was on record. The Grahams argue that, as grantees, they were entitled to presume that the "land of Grace Glover" in fact referred to the Glover land as recorded. We disagree.

■ A property boundary such as the "land of Grace Glover," which contains no specific metes and bounds, is, when established, a monument vis-á-vis the defendants' deed. The monument is controlling. *Hodgdon v. Campbell,* 411 A.2d 667, 672 (Me.1980); *Milliken v. Buswell,* 313 A.2d 111, 116 (Me.1973); *Bryant v. Maine Central Railroad Co.,* 79 Me. 312, 312–13, 9 A. 736, 736 (1887).

■ By accepting the Shirrefs's deed, the Grahams accepted the "land of Grace Glover" as a monument. The Shirrefses intended to convey only property south to that monument.[4] Because even distance must yield to that boundary when finally established, the third-party defendants breached no warranty covenants even if the boundary is inconsistent with the distances specified in the Glover deed. *See Liebler v. Abbott,* 388 A.2d 520, 521–22 (Me.1978). The entry of summary judgment in favor of the Shirrefs was proper.

4. The facts of this case are, therefore, different from those in *Howe v. Natale,* 451 A.2d 1198 (Me.1982). In this case, the Shirrefs's deed provided that the property they conveyed was bounded southerly by "land of Grace Glover." In their affidavit, the Shirrefses stated that "[a]t the time of the sale of the property to the Grahams, we made no specific allegations to owning any property other than what was described in the deed." The Glover-Graham action would, therefore, determine the proper boundary line and exactly what property the Shirrefses conveyed; there could be no breach of the warranty covenants.

## II. Fourth-Party Defendants Osgoods and Fifth-Party Defendants Chaplins

The fourth-party defendants, the Osgoods, argue that the summary judgment entered in their favor may not be reviewed because the fourth-party plaintiffs, the Shirrefses, filed no cross-appeal within the statutory period as required by M.R.Civ.P., Rule 73(a). The fifth-party defendants, the Chaplins, argue similarly concerning the claims of the fifth-party plaintiffs, the Osgoods.

Neither the Shirrefses nor the Osgoods ever have filed any appeal. See M.R.Civ.P., Rule 73(a). The judgments in favor of the fourth-party defendants Osgoods and fifth-party defendants Chaplins are final and may not be reviewed.[5] Rice v. Amerling, 433 A.2d 388, 390–91 (Me.1981).

## III. Adverse Possession; Prescriptive Easement

The Grahams allege that the trial justice erred in ruling, as a matter of law, that the plaintiff had acquired, by adverse possession or boundary by acquiescence, property adjacent to, and southerly of, the old fence line and had acquired, by prescription, a thirteen-foot easement adjacent to, and northerly of, the old fence line. We agree.

The justice proceeded on the erroneous assumption that the deed descriptions in-

volved in the case were irrelevant because the plaintiff's claim of ownership was based on adverse possession, not on her record title. The justice stated:

Either the Plaintiff—if the Plaintiff makes his [sic] claim in adverse possession, then I will decide where the boundary is. If the Plaintiff doesn't succeed fully on the theory of adverse possession, then that's the end of the case, and the description in the deed controls, whatever that description is. But I don't think we care at this point what that description is. . . .

Because of this assumption, the justice disallowed the Grahams' efforts to establish the location of the boundaries in question by offering the plaintiff's mortgage deeds, the deeds in the defendants' chain of title, and the expert testimony of a surveyor.[6]

A brief review of the elements required to obtain title by adverse possession[7] or by the doctrine of acquiescence[8] and those required to acquire an easement by prescription[9] reveals the error in the justice's analysis. The deed descriptions were material to the plaintiff's claims to the land "up to the old fence" and to an easement adjacent to that land. For example, the precise location of the triangular-shaped property sold by Doris Calderwood to the Chaplins is relevant to the adverse

---

**5.** We note, of course, that the analysis that affirmed the entry of summary judgment in favor of the Shirrefses also applies to the Osgoods and the Chaplins.

**6.** Mr. Graham had examined the deeds before erecting his garage and moving the chain fence.

**7.** Possession that is sufficient to convey title by adverse possession must be "actual, open, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years." McMullen v. Dowley, 418 A.2d 1147, 1152 (Me.1980); see 14 M.R.S.A. § 816 (1980).

**8.** Obtaining title to property by the doctrine of acquiescence requires:
(1) possession up to a visible line marked clearly by monuments, fences or the like; (2) actual or constructive notice to the adjoining landowner of the possession; (3) conduct by the adjoining landowner from which recognition and acquiescence not induced by fraud

or mistake may be fairly inferred; (4) acquiescence for a long period of years such that the policy behind the doctrine of acquiescence is well-served by recognizing the boundary.
Calthorpe v. Abrahamson, 441 A.2d 284, 289 (Me.1982).

**9.** The requirements for the creation of a prescriptive easement are similar to the elements required in adverse possession: "A prescriptive easement is created only by a continuous use for at least twenty years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed." Comber v. Inhabitants of the Plantation of Dennistown, 398 A.2d 376, 378 (Me.1979) (quoting Dartnell v. Bidwell, 115 Me. 227, 230, 98 A. 743, 744 (1916)).

possession and easement claims.[10] If the Calderwood property had been located between what is now the Graham and Glover properties,[11] the Grahams would be incorrect in alleging that the requisite twenty-year period was interrupted because the plaintiff owned contiguous properties from 1957 to 1960, the period during which she owned what are now the Graham and Glover parcels. The location and history of the Old Ginn Point Road, the apparent basis for the claimed right-of-way, were left undetermined at trial and are also relevant to this issue.

On the other hand, the plaintiff's testimony suggested that the Calderwood property did not extend to the shore. During 1957 through 1960, therefore, the plaintiff may have owned only partially adjoining property, again depending on the location and date of abandonment of the Old Ginn Point Road. In any event, if the Calderwood property did, in fact, occupy any part of the disputed property, the plaintiff testified that she did not claim the Calderwood property and that she never has claimed it. This statement essentially destroys any claim of right the plaintiff could have had to the property south of the "old fence line."

In addition, the plaintiff testified that although she had no deed to this property, she had shared the cost of the purchase of the Calderwood property with the Chaplins by reducing their payment to her for the now Graham property. This testimony was not contradicted. Again, depending on the location of the Calderwood property, the plaintiff could, in fact, own part of the disputed land.

■ By excluding as irrelevant to the claims of adverse possession and easement by prescription the deed descriptions, the trial justice rendered it impossible to determine whether the plaintiff had owned adjoining property or whether the plaintiff and her mother owned adjoining property, which included the disputed property and right-of-way. Such determinations were crucial to the resolution of this property dispute. Needless to say, one may not hold adversely to oneself; in order to be adverse, the nature of the overt acts must leave "no question as to the intention to oust the owner from possession and ownership." *Hibbard v. Robert C. Fromkin Woolen Corp.,* 156 Me. 433, 435, 165 A.2d 49, 51 (1960). Ownership of contiguous property would interrupt the running of the twenty-year period. Similarly, the doctrine of acquiescence requires notice to the "adjoining landowner" of the claimant's possession. *Calthorpe v. Abrahamson,* 441 A.2d 284, 289 (Me.1982). Common ownership of the dominant and servient estates would also have interrupted acquisition of the prescriptive easement. *LeMay v. Anderson,* 397 A.2d 984, 988 (Me.1979); *Mansur v. Blake,* 62 Me. 38, 43 (1873). Finally, knowledge of the correct boundaries would be relevant to Glover's "color of title." *John Wallingford Fruit House Inc. v. MacPherson,* 386 A.2d 332, 334 (Me.1978).

There was no basis for the trial justice's finding, as a matter of law, that the plaintiff had acquired the property north to the "old fence line" and an easement adjacent to that line. Further, if the deed descriptions and surveyor's testimony offered by the defendant had not been improperly excluded, resolution of any resulting factual issues would have been a proper consideration for the jury.

The entry is

Appeal sustained.

Judgment on complaint vacated.

Judgment on third-party complaint affirmed.

---

10. The Calderwood-Chaplin deed was admitted in evidence with no discussion, solely on the issue of the defendant Graham's state of mind.

11. The Calderwood deed states that the triangular-shaped property extends from a road on the west to the shore between two cottages. The plaintiff's deed states a 45½-foot eastern boundary which, depending on the plaintiff's southern boundary, not established at trial, may or may not extend to the depression line.

Remanded for further proceedings consistent with this opinion.

All concurring.