Carline E. CATES

v.

Darryl E. SMITH et al.

No. Som–93–59.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1993.

Decided Jan. 25, 1994.

Geoffrey F. Brown (orally), Perkins, Townsend, Shay & Brown, P.A., Skowehgan, for plaintiff.

Neal C. Corson (orally), Corson & Shusta, P.A., Madison, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Carline Cates appeals from a judgment entered in the Superior Court (Somerset County, *Browne, A.R.J.*) affirming the judgment of the District Court (Skowhegan, *Clapp, J.*) determining the boundary between the Cates property and that of the defendants, Darryl Smith and Cathy Smith, and denying Cates's claim of title to the disputed property by adverse possession. Finding no error in the record, we affirm the judgment.

Cates and the Smiths own abutting parcels of land in Moscow. All of the property in question is bounded by the Chamberlin Hill Road, also known as the Stream Road, on the east and Austin Stream on the west. The Smith property lies to the north of the Cates property and consists, insofar as relevant to this dispute, of two abutting parcels. The eastern parcel is bounded by the Stream Road on the east and was purchased by the Smiths from Erna Pratt in 1978 (the Pratt–Smith parcel). The western parcel is adjacent to Austin Stream and was purchased by the Smiths from James Cahill in 1987.[1]

Prior to purchasing her property in 1961, Cates walked what she believed to be the

---

1. The boundary between the Cates property and the Cahill–Smith parcel was established by the District Court as requested by Cates. The location of that boundary is not challenged on appeal.

boundary lines with a predecessor in title, William Hunting. Hunting pointed out an iron pin in the location that Cates claims is the northeast corner of her lot along the Stream Road.[2] She also observed a berm along what she believed was the common boundary of her parcel and the Pratt–Smith parcel. This berm is located approximately 120 feet south of the Smith house and 80 feet north of the Cates house. It is the area south of this berm that is the subject of this dispute.

The relationship between Pratt and Cates was "neighborly." Cates testified she and Pratt would pick strawberries in the disputed area. Until the mid–1970s, while the Cates children were young, they played in the disputed area using a swing set and a small, above-ground, children's swimming pool Cates had placed in the area. Except for weekends, Cates and her husband were away during the summers. In 1985, Cates placed some wagon wheels in the disputed area. There was evidence that Pratt mowed the lawn only to the north of the berm and that Cates had mowed and raked the lawn to the south of the berm. There was also evidence, however, that the Smiths had mowed south of the berm when they first acquired the Pratt–Smith parcel.

In 1990 a boundary dispute arose between Cates and the Smiths. Cates commenced this action in the District Court seeking a declaration of the boundary's location. She also sought to confirm her title to the disputed property through adverse possession. The District Court determined that the boundary line between the Cates property and the Pratt–Smith parcel was south of the berm. On Cates's claim that she acquired title to this area through adverse possession, the District Court held that Cates failed to prove sufficiently the elements of adverse possession. Specifically, it stated:

[Cates] has failed to ... prove that her clear acts and conduct in such use was fit to put a person of ordinary prudence, and particularly Erna Pratt and/or the Defendants, on notice that the estate in question was actually, visibly and exclusively held by her in antagonistic purpose. The evidence ... portrays [Cates] as historically not really knowing where her line was but intending to hold to the southerly line of [the Pratt–Smith] lot.... She started her use of the parcel under the mistake of fact ... and continued under that misimpression until 1990, but she neither intended to take Erna Pratt's land nor used or held it in antagonistic purpose. [Cates's] use and occupation, being without absolute intent to adversely possess, was therefore conditional in nature.

Cates moved to amend the judgment entered against her on her adverse possession claim, arguing that her absolute intent to oust the true owners from possession and ownership of the disputed property was established by her testimony that she intended to claim the disputed land without regard to the Smiths' claim as to the location of the southern boundary of their property. The District Court rejected this argument, stating that the court recalled Cates's testimony, but refused to accept it as decisive of the issue. The court expressly found that her asserted intent conflicted with "an awful lot of other evidence." From the judgment against Cates on her claim of title by adverse possession, Cates appealed to the Superior Court. The Superior Court affirmed the judgment of the District Court and Cates appeals.

Cates contends that the District Court erred[3] in refusing to find that she established her absolute intent to claim the disputed land by adverse possession. The determination that Cates failed to carry her burden of proof may be reversed on appeal

2. The northern boundary of the Cates property at issue here is described in the deed to Cates as follows:

> Beginning on the west side of the Chamberlin Hill Road at the southeast corner of land now or formerly owned or occupied by Daniel Pratt; thence westerly along the south line of said Pratt land to Austin Stream....

In 1947, Daniel Pratt deeded the Pratt–Smith parcel to Erna Pratt.

3. When, as here, the Superior Court acts as an intermediate appellate court, we review directly the trial court's findings. *Department of Human Services v. Roy*, 585 A.2d 813, 816 (Me.1991).

only if the evidence compelled a contrary finding. *Agliato v. Norton,* 632 A.2d 144, 146 (Me.1993). "Possession that is sufficient to convey title by adverse possession must be 'actual, open, notorious, hostile, under claim of right, continuous, and exclusive for a period of at least twenty years.'" *Emerson v. Maine Rural Missions Ass'n,* 560 A.2d 1, 2 (Me.1989) (citation omitted). The claimant must establish these elements "by clear proofs of acts and conduct fit to put a man of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose." *Id.; see also id.* at 2 n. 1. The intention to hold only to the true boundary, wherever that boundary might be, defeats the claim of one seeking title by adverse possession to land beyond the true boundary. *Landry v. Giguere,* 127 Me. 264, 268, 143 A. 1, 3 (1928). *See also McMullen v. Dowley,* 483 A.2d 698, 700 (Me. 1984) (if occupier intends to hold the property only if he were in fact legally entitled to it, the occupation is conditional and cannot form the basis of an adverse possession claim.)[4] "It is primarily for the factfinder to judge the credibility of witnesses and to consider the weight and significance of any other evidence. As such, this Court must give due regard to the trier of fact's determinations on credibility, weight and significance of evidence." *Tonge v. Waterville Realty Corp.,* 448 A.2d 902, 905 (Me.1982). Although another factfinder could have reached a contrary conclusion, we cannot say that based on the evidence before it the District Court was compelled to find that Cates had the requisite intent to establish her claim of title to the disputed area by adverse possession.

The entry is:

Judgment affirmed.

All concurring.

---

4. We note that the Legislature has recently removed the requirement that the claimant have the specific intent to claim the land of another as articulated in *Landry* and *McMullen.* P.L.1993, ch. 244, § 1 (codified at 14 M.R.S.A. § 810–A (Supp.1993)) (effective Oct. 13, 1993). *See also* L.D. 1076, Statement of Fact (116th Legis.1993). Because this action was filed prior to the effective date of the legislation, Cates is required to establish this adverse intent. *See* P.L.1993, ch. 244, § 2 (application of Act).