Celeste **HARKINS**

v.

Philip R. **FULLER** et al.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 3, 1994.
Decided Jan. 10, 1995.

Wayne B. Libhart, William B. Entwisle, Gross, Minsky, Mogul & Singal, Ellsworth, for plaintiff.

Philip R. Foster, Stephen D. Foster, Foster Law Offices, Ellsworth, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Celeste Harkins appeals from a judgment entered in the Superior Court (Hancock County, *Kravchuk, J.*) in favor of Philip Fuller and Marion Pettegrow following a nonjury trial on Harkins's complaint pursuant to 14 M.R.S.A. § 5951–5963 (1980) seeking declaratory relief on her claimed adverse possession of certain property located on Shore Road in Southwest Harbor and damages pursuant to the common law and 14 M.R.S.A. § 7552 (Supp.1994) [1] for an alleged trespass by defendants. Because we agree with Harkins that the court erred in determining that Harkins had to prove the elements of adverse possession for all the land claimed in her complaint to prevail as to a portion of the land, we vacate the judgment.

In October 1986, Harkins filed the present complaint against Fuller and Pettegrow seeking a declaratory judgment establishing her ownership of the property to the east and south of her property by adverse possession and money damages on various property damage claims. At the trial, numerous exhibits were introduced in evidence, including photographs depicting the disputed property at various times, together with testimony of witnesses for Harkins. The defendants did not offer any testimony but rested at the conclusion of Harkins's case.

The evidence disclosed: On May 10, 1930, when Harkins was seven years old, her father, John Reynolds, purchased a parcel of land with a house situated thereon, located on Shore Road in Southwest Harbor. Harkins resided on the property most of the time between 1930 and 1946 and visited it frequently between 1946 and 1979. Reynolds described what he considered the boundaries of his land to his children and grandchildren and instructed them not to play beyond those limits. Reynolds's description of the boundaries exceeded the boundaries described in the deed.

After Reynolds's death in 1961, Harkins eventually became the owner of the property in 1979. Pettegrow, Fuller's predecessor-in-title, acquired the property to the east and south of Harkins in 1956. Until 1986, there was an embankment and bushes and trees on the eastern side of Harkins's house. Believing this to be the easterly boundary of the Reynolds property, Reynolds and his successors mowed the lawn between the house and this boundary. Harkins and her daughter, Margo Stanley, testified that they have treated this as the easterly boundary since 1930. Reynolds's children and grandchildren frequently played on the property up to where Reynolds told them the lines are located. In 1986, Fuller started building a parking lot and foundation for a building and removed the embankment and lawn to the east of Harkins's house. Following .the trial, the court found that the uses Harkins and her predecessors made of the premises were not sufficient to put the true owner on notice that the entire premises claimed were openly and

---

1. 14 M.R.S.A. § 7552 (Supp.1994) provides, in pertinent part:

Whoever cuts down, destroys, injures or carries away any ornamental or fruit tree, Christmas tree, evergreen boughs, agricultural product, timber, wood, underwood, stones, gravel, ore, goods or property of any kind from land not that person's own, without license of the owner, or injures or throws down any fences, bars or gates, or leaves such gates open, or breaks glass in any building is liable in damages to the owner in a civil action. If such an act or such acts are committed willfully or knowingly, the defendant is liable to the owner in treble damages and, in addition, for the cost of any professional services necessary for the determination of damages, for attorney's fees, and for court costs.

exclusively held by an adverse claimant during the period 1930 to 1950, the period that Harkins claimed the adverse possession to the parcel described in her complaint had ripened. The trial court found that Harkins had established that a strip of lawn exceeding the deed on the eastern side of her house had been continuously maintained by Harkins and her predecessors-in-title up to the time Fuller cut away the embankment and brought in gravel as fill. The court concluded, however, that unless Harkins proved all the elements of adverse possession for *all* the property claimed in the complaint, she could not prevail on her claim for a part of the disputed premises. Accordingly, a judgment was entered for the defendants, and Harkins appeals.

 Harkins first contends that the evidence demonstrates that she has established all the elements of adverse possession for the entire portion of land she described in her complaint. We disagree. To claim possession of land by common law adverse possession, the claimant must demonstrate possession that is " 'actual, open, notorious, hostile, under a claim of right, continuous, and exclusive for a period of at least twenty years . . . by clear proofs of acts and conduct fit to put a man of ordinary prudence, and particularly the true owner, on notice that the estate in question is actually, visibly, and exclusively held by a claimant in antagonistic purpose.' " *Cates v. Smith,* 636 A.2d 986, 988 (Me.1994) (quoting *Emerson v. Maine Rural Missions Ass'n,* 560 A.2d 1, 2 (Me.1989)). The trial court's determination that Harkins "failed to carry her burden of proof may be reversed on appeal only if the evidence compelled a contrary finding." *Id.* at 987–88 (citing *Agliato v. Norton,* 632 A.2d 144, 146 (Me. 1993)).

 The evidence presented by Harkins does not compel a finding that Harkins's predecessors-in-title demonstrated possession of the *entire* disputed premises that was open, notorious, hostile, and adverse to the true owner. Harkins offered little evidence with regard to the portion of the disputed land to the south of her house. In fact, photographs admitted in evidence depict much of the land to the south of her house to have been overgrown with bushes and weeds. Thus, the trial court did not err as to this portion of its ruling that Harkins and her predecessors-in-title did not make such use of that land as to put the true owner on notice.

 We agree, however, with Harkins's contention that the trial court erred by concluding that she had to establish the elements of adverse possession for all the land claimed in her complaint to prevail as to any portion of the land. Pursuant to the Declaratory Judgment Act, the trial court has the power to establish the parties' rights in real property and to determine the location of the disputed boundary line. *Hodgdon v. Campbell,* 411 A.2d 667, 669 (Me.1980). "When an entry is made upon a lot of land and a part is occupied without any recorded claim of title, a title by adverse possession is limited to the part actually occupied unless it be part of a farm." *Banton v. Herrick,* 101 Me. 134, 137–38, 63 A. 671 (1906). In the present case the trial court erred in taking an "all-or-nothing" approach with regard to deciding Harkins's claim of adverse possession. Either on the record before it or by a further hearing, if the court deems it necessary, the court should determine the boundary of the land, if any, for which Harkins has established the elements of adverse possession.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.