STATE OF MAINE                         SUPERIOR COURT
HANCOCK, SS.                           DOCKET NO. CV-15-58


BEVERLEY WADSWORTH, et al    )
          Plaintiffs         )
                             )         DECISION & JUDGMENT
     v.                      )
                             )
MORTON HAVEY                 )
          Defendant          )


This matter came before the court for a bench trial during the July civil trial term. Subsequent to trial, the parties supplemented the record with the submission of the deposition transcript from Michael Benjamin. The parties then submitted written closing arguments and reply memoranda for the court's further consideration.

The issues to be addressed at trial and resolved by the court included the location of boundary lines between the adjacent property of the parties; express easement rights; declaratory judgment claims regarding the same; and trespass and damage to property.[1] After consideration of the testimony and evidence presented, and the arguments of counsel, the court finds as follows:

---

[1] The specific issues to be resolved at trial were identified in the Court's amended pretrial Order dated December 7, 2016. That Order did not include "nuisance" claims.

1

# FACTUAL BACKGROUND

The plaintiffs, Dyer and Beverly Wadsworth, own a residential parcel of land on Tunk Lake Road in Sullivan Maine, which they acquired in 2011. Their parcel, along with an adjacent lot, was originally created in 1967 by a deed from Oscar Havey to Clarence Bevis. The defendant, Morton Havey, is the current owner of the remaining adjoining parcel.

The Wadsworths' deed, which references the original 1967 conveyance creating the lots, ties the property boundaries to the location of the "northerly sideline of the public highway" now known as Tunk Lake Road. Louis Edward Pare, the surveyor the plaintiffs hired to survey their property, and who later provided testimony during the trial, determined the road references to be ambiguous, and based his opinions of the lot boundaries upon a 1987 Charles Simpson survey, and Mr. Simpson's location of several pre-existing iron monuments. The surveyor the defendant hired, Adam Robinson, testified that, in his opinion, reference to the north sideline of the road in the relevant deeds, was unambiguous, and referred to the north side of the Tunk Lake Road public right-of-way. The Robinson opinion of the boundary locations regarding the plaintiffs' parcel was very similar to the Pare and Simpson surveys, but actually placed the northern boundary line of the plaintiffs' parcel in a more favorable location to the plaintiffs than the plaintiffs' own expert's opinion regarding that same boundary line. The defendant's own opinion regarding the location of the boundaries of the plaintiffs' parcel relies upon a theory that the starting point call from the deed is in the center of the Tunk Lake Road. The court finds the evidence does not support such a conclusion.

Defendant Havey owns unimproved acreage to the north and east of the plaintiffs' lot, from which he harvests blueberries, and from which he has harvested timber on one occasion in 2000.[2] The properties share boundaries on two sides.

Mr. Havey's property is benefited by a 1967 reserved right-of-way over the Wadsworth lot, that is described "as a right-of-way for all purposes of a way over the road as now used and existing" running approximately north and south between Tunk Lake Road and the defendant's land. The deed creating the right-of-way, and subsequent conveyances containing the same easement, did not designate a specific width, either at its opening onto the highway or at any point throughout the length of the right of way. However, the evidence presented at trial suggests that the 1967 right-of-way road location was consistent with the bounds of the current road.

Over the years, the right-of-way has been used seasonally (or every other season) by a company Mr. Haley has contracted with to harvest blueberries. For crop maintenance and harvesting, the existing road has been easily accessed by flatbed and other non-articulated trucks, some of which towed trailers and excavating equipment. The existing right-of-way has been adequate for that purpose.

From time to time the right-of-way has been used to harvest timber on Mr. Havey's land. Defendant's forester, Michael Benjamin, did not describe any

---

[2] There was evidence indicating that the prior owners of the Defendant's parcel also engaged in some degree of timber harvesting activities.

3

difficulty moving equipment or wood products on the right-of-way when the timber was last harvested in 2000. The mere fact that the equipment currently available for harvesting purposes is significantly larger than what would have been available in 1967 does not entitle the defendant to dramatically increase the burden on the servient estate in order to more easily accommodate the larger equipment.

The Court finds that the boundary lines of the Plaintiffs' parcel and the right-of-way boundaries are as described within the referenced Pare survey attached and incorporated herein as Plaintiff's Exhibit 1.

Beginning around 2012, the defendant, Mr. Havey, either personally or at his direction, began mowing, removing trees, shrubs and a wildflower garden, and disturbing personal property south of the shared boundary line on the northern border of the plaintiffs' parcel. The court concludes that sometime in 2015, Mr. Havey, as part of his mowing activities, removed nearly all of the iron pipes and pins marking the shared boundary line along the north side of the Wadsworth parcel. These monuments were visible and in place when the property line was surveyed in 1987 and in 2011, but disappeared after the plaintiffs undertook their landscaping activities near the designated right-of-way location. The incursions by Mr. Havey have deprived the plaintiffs of large wildflower gardens that stood between their home and the defendants blueberry fields. The defendant has caused debris to be strewn on the plaintiff's property and damaged trees that had grown on their property. The court finds that in order to restore their property, plaintiffs have spent $2500 on surveying costs, and will need to spend $700 in additional

4

surveyor costs to replace missing boundary markers. Additional expenses in the amount of $500 will be required to restore the mown wildflower gardens.

## ANALYSIS

### 1. Plaintiffs' Claims

#### Trespass

Under Maine law, common-law trespass has occurred when "irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally enters land in the possession of the other, or causes a thing or a third person to do so." Restatement (Second) of Torts §158(a)(1965). "[T]he owner of an easement who exceeds his rights either in the manner or extent of its use is guilty of trespass. *Beckwith v. Rossi, 157 Me. 532, 537 (1961).*

In this case, the defendant owns a right-of-way interest over the road as it existed in 1967, and nothing more. Mr. Havey's repeated entry onto the plaintiffs' land, without permission, to mow outside of the deeded right-of-way constitutes trespass. He damaged the land when he and/or his agents removed the survey markers and monuments, and destroyed the vegetation without the owners permission. This trespass, although intentional, does not, for the Court, demonstrate malice, either express or implied, sufficient to support an award of punitive damages against the defendant.

Accordingly, based upon the facts set forth above, Judgment in the amount of $3,700 plus costs is awarded to plaintiffs on Count 2 of the Complaint for trespass. Moreover, defendant is permanently enjoined from entering, without permission, upon the Plaintiffs' property as described in the attached and incorporated Plaintiff's Exhibit 1, except to use the existing right-of-way within the bounds described in this Decision and Judgment.

Declaratory Judgment

The Maine Uniform Declaratory Judgment Act provides that "[c]ourts of record within their respective jurisdiction shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed." 14 M.R.S. §5953. "An action for declaratory judgment is an appropriate vehicle for establishing rights in real property." *Hodgdon v. Campbell, 411 A.2d 667 (Me. 1980)*. The "trial court has power to establish parties' rights in real property and to determine the location of disputed boundary line[s]." *Harkins v. Fuller, 652 A.2d 90 (Me. 1995)*.

The width of the easement in this case is defined by the 1967 road's bounds. When the easement was created in 1967, the grantor's intent was to occupy no greater footprint than what already existed. Maine law provides no right to expand an easement without consent from both parties to the grant, and that has not occurred in this case. The defendant's repeated disregard of the plaintiffs' property rights, both with respect to the shared boundary and the easement's scope, make clear that a judicial declaration of the parties rights is necessary.

6

Accordingly, the parties' respective property rights were established in 1967. Specifically, the right of way's dimensions are constrained by the road's size as it existed in 1967. Moreover, the court hereby declares that the location and size of the right-of-way, and the boundary line of the plaintiffs' parcel are as established by the Pare survey attached and incorporated herein as Plaintiffs Exhibit 1.

The defendant has no rights beyond the scope of his express easement on any portion of plaintiff's property, including that within the Tunk Lake Road right-of-way. Any rights associated with that public road right-of-way inure exclusively to the Town of Sullivan, Maine. The plaintiffs have an on-going obligation to maintain and/or prune the branches of any vegetation they have planted or which exists on their property, which would in any way restrict the use of the defendant's right-of-way as further described and delineated by this Judgment.

Plaintiffs are hereby awarded Judgment and costs on Count 3 of the Complaint seeking a declaratory judgment.

2. Defendant's Claims

The defendant has asserted claims in a counterclaim which he filed, and which were preserved in the pretrial order as issues to be addressed at trial. These specifically included prescriptive easement rights (Count II and V),

implied easement rights based upon quasi-easement (Count III) and slander of title (Count IV)[3].

Based on the findings set forth above, the defendant has failed to meet his burden in establishing the existence of any prescriptive easement or implied easement different from the express easement which he owns, and which has been more fully described and delineated by this Judgment. The defendant has also failed to prove that any assertion of the plaintiffs' rights to their property has constituted a slander of title with respect to the defendant's property. Finally, any physical planting or structure placed or erected by the plaintiffs have not improperly obstructed the defendant's access to and use of his easement rights over the plaintiff's property. As noted above, the plaintiffs will continue to be obligated to maintain any such plantings or structures to assure no future encroachment on the defendant's easement rights.

Accordingly, Judgment and costs are hereby awarded to the plaintiffs with respect to all counts of the defendant's counterclaim. Any remaining counts of the pending Complaint or Counterclaim not otherwise specifically addressed above are hereby dismissed.

---

[3] The pretrial Order issue referring to "[w]hether plaintiffs have obstructed defendant's access to the right of way and, if so, the extent of the obstruction" might be broadly read to encompass the "Slander of Title" claim.

8

The Clerk is directed to incorporate this Decision and Judgment, by reference, in accordance with MRCivP 79(a).

Date: 12/7/18

SUPERIOR COURT JUSTICE

ALL-STATE LEGAL®

**PLAINTIFF'S EXHIBIT**

1



NOTES

1) Measurements made with Nikon DTM-522 Total Station and recorded with HP 48GX data collector.

2) To the best of the undersigned surveyor's knowledge, this map, and the survey from which the map is derived, are in conformance with Chapter 90 of the Rules of the Maine Board Of Licensure for Professional Land Surveyors effective April 1, 2001.

3) Re-bars set affixed with plastic caps inscribed with "L. E. Pore PLS 1228".

4) Re-bars set below grade along Havey right of way to define the limits of the traveled way of the right of way observed during the course of this survey. The right of way is appurtenant to a lot of land of Morton Havey described in a deed recorded in Bk. 1043, Pg. 499 and referenced hereon.

5) This survey based on a survey map by Charles P. Simpson titled "Property of John Riley", said map dated July, 1987.

6) The blueberry field located northerly of, and abutting, the northerly bound of the Wadsworth lot appears to have been mowed at the same time as the area mowed within the Wadsworth lot.

NORTH

MAGNETIC 2011

Morton Havey
Bk. 1043, Pg. 499
Blueberry Field

Iron Pipes
Found 2011
Gone 2015

Bent Copper
Pipe Found
2015, Not
in Place 2011

Tie Line
N 21° 00' 13" W
3.25'

S 81° 43' 05" E
100.03'

S 81° 44' 58" E, 95.14'

IS Re-bar
Set 2011
Gone 2015

Copper Pipe
Found 2011
.50' Southerly
of Bound
Gone 2015

S 81° 44' 58" E
104.79'

Hatched Area is
Recently Mowed
Area 2300± Sq. Ft.
(See Note 6)

Tie Line
N 84° 05' 14" W
82.73'

Hatched Area is
Recently Mowed
Area 3250± Sq. Ft.
(See Note 6)

N 10° 42' 18" E
190.77'

Beverley B.
& Dyer S.
Wadsworth
Bk. 5594, Pg. 187
1.54± Acres

Septic
Field
Mound

Morton Havey
Bk. 1043, Pg. 499

S 10° 47' 24" W
199.22'

Edge of
Traveled Way
Poorly Defined

Well
Casing

Garage

House

CRUSHED
ROCK

Well Casing
Well Referenced
in Well Easement
in Savoy Deed

Tie Line
N 75° 21' 11" E
3.87'

S 12° 35' 52" W
12.66'

Tie Line
N 81° 41' 02" W
100.02'

Edge of
Traveled Way
Poorly Defined

Overhead
Wires

Pipe Found
Bent Over
Below Grade
Witnessed by
IS Re-bar Set

Tunk Lake
Road

Route
183

Presumed Location of Road
Right of Way Sideline

24.75'

Overhead
Wires

PAVED

TRAVELED WAY

300'±

Presumed Location of Road
Right of Way Sideline

24.75'

Tie Line
N 85° 07' 33" W
178.35'

Tie Line
N 81° 55' 46" W
199.67'

LEGEND

• IS Re-bar Set Below Grade (See Note 3)
○ Iron Pipe Found Unless Otherwise Noted
○— Utility Pole
₵ Centerline of Road Traveled Way
R/W Right of Way

Boundary Survey For:
Record Owners

**BEVERLEY B.
&
DYER S.
WADSWORTH**

Tunk Lake Road (Route 183)
Sullivan, Maine
October 19, 2011   1" = 30'